IOWA CIVIL RIGHTS COMMISSION, Appellee,

v.

CITY OF DES MOINES/PERSONNEL DEPARTMENT, Appellant.

No. 65290.

Supreme Court of Iowa.

Dec. 23, 1981.

Earl W. Roberts, City Sol., and Thomas J. McSweeney, Asst. City Atty., Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., and Scott H. Nichols, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, McCORMICK, and SCHULTZ, JJ.

SCHULTZ, Justice.

This interlocutory appeal arose from a judicial proceeding to enforce an administrative subpoena *duces tecum* issued by the plaintiff, Iowa Civil Rights Commission. The defendant, City of Des Moines, refused to produce personnel and medical records of certain past and present employees as ordered by the subpoena. At the enforcement proceeding the City alleged that the records were confidential and not subject to the Commission's subpoena power. The trial court, by oral direction, provided a procedure to limit the subpoena of medical records to the files of those employees that had sustained injuries and required that such employees be given notice of and an opportunity to object to the subpoena. The City assigns error to this ruling. We find no error and affirm the trial court.

On January 2, 1976, James E. Washington filed a complaint with the Iowa Civil Rights Commission alleging that the Personnel Department of the City of Des Moines had discriminated against him on the basis of physical disability and race. In the complaint, Washington alleged the following:

I am a Black male. I was hired by the City Personnel Department to work in the Garbage Department in 1969. In 1970 when the Metro Solid Waste Agency took over the city garbage collection I retained my job and became an employee of the new agency. In 1971 while working I injured my knee. The injury was such that I eventually had to have knee surgery. After the surgery I received a doctor's release and returned to work where I worked until December 31, 1975

without any problems. When the City again assumed the responsibility for trash pick up I applied to the City Personnel Department for a job. I filled out the application and was told to report to the Health Department for a physical. I was found to be in good health but was told by Dr. Orduna that I had not passed the physical and could not be hired by the City because of my knee surgery. I know of a white employee who had knee surgery after I did who was hired by the City.

On November 14, 1979, while investigating Washington's complaint, the Commission issued a subpoena *duces tecum* to the City commanding it to produce for inspection personnel and medical records of seventy-three employees who had worked or were working as refuse collectors. The City refused to produce the requested records and on December 19, 1979, the Commission filed a petition for enforcement of its administrative subpoena in the Polk District Court. The City filed an answer seeking dismissal of the petition, alleging as an affirmative defense that the records sought were confidential under section 68A.7(11), The Code.

An evidentiary hearing was held on June 18, 1980, and both parties presented evidence. The trial court questioned the last witness to appear, the City Public Health Director, a medical doctor. The trial court entered into a colloquy on the record with counsel and stated that it thought the Commission was entitled to examine the records. However, the court then expressed concern about the rights of individual employees with regard to their medical records and asked the health director if his staff could review the medical records of the designated employees and accumulate the files of those employees who had sustained injuries during a certain period of time. The health director responded affirmatively, and the trial court issued what the parties allege to be an oral order requiring inspection and accumulation of the medical files of injured employees. The court further requested that the City notify such individuals that their records were being sought by the Commission and that the court would hear any objections as to why the records should not be furnished to the Commission. The Commission agreed to this procedure. The City objected, however:

MR. ROBERTS: Your Honor, if I may, I would like to interpose an objection here for the record so that it will not appear at some later date that the City is consenting to this process.

THE COURT: I understand.

MR. ROBERTS: Because I think it does place an inordinate burden upon those City employees who I think are protected by 68A.7 because in effect you are saying that these persons in order to preserve their right of privacy must come down to this court and—

THE COURT: I am not saying that, counselor, because I could rule today to turn those records over and I am about to do that, but I am not going to do that because I am going to give them an opportunity to come down here and explain to me or show why they shouldn't be released. Now, if you want me to rule today, I will rule today.

MR. ROBERTS: No, your Honor, I wouldn't want it.

THE COURT: Because I think the Commission has made a prima facia showing that they are entitled to these records and I can make findings of fact and conclusions of law along those lines if you want me to at this point.

I am prepared to do that but I don't want to do that, I want to give these individuals an opportunity to have their day in court; and if there is something in their files they don't want the public to know, and that is the purpose of the Act really, to protect them, not to protect the City.

You are a buffer between them and the public. It would protect you in the final analysis from any suits they might have against you if you did release them without authority, and from that standpoint you are protected; but I think the real people that are involved and the ones

that are really intended to be protected by the statute are the individuals whose records are being sought.

They are the ones that really have the claim and if there is anything in their files they don't want us to see or to have the public know about, they should have a right to present that to us.

On July 11, 1980, the City filed an application for permission to appeal from the trial court's order. The Commission filed an application for permission to cross-appeal on July 18, 1980. We granted both applications for interlocutory appeal. The City claims the trial court erred (1) in failing to exempt from examination by the Commission information that met the requirements of confidentiality under section 68A.7, The Code, as medical and personnel records, and (2) in exceeding its statutory authority under chapter 68A by ordering city employees to appear and show cause why their records should not be examined. The Commission asserts that it had authority to issue the investigative subpoena and that it should have been sustained because chapter 68A was inapplicable.

I. *Applicability of section 68A.7.* In this appeal there is a confrontation between two separate governmental units. Each unit exists by virtue of statute and in this action each represents the interests of different private citizens and their respective rights. The power to investigate clashes with the right of confidentiality. To determine the superior right, we must examine, interpret, and reconcile the statutes involved.

Section 601A.5(2), The Code, gives the Civil Rights Commission power to "receive, investigate, and finally determine the merits of complaints alleging unfair or discriminatory practices." The Iowa Administrative Procedure Act invests administrative agencies with subpoena power:

Agencies have all subpoena powers conferred upon them by their enabling acts or other statutes. *In addition, prior to*

*the commencement of a contested case . . ., an agency having power to decide contested cases has authority to subpoena books, papers, records and any other real evidence necessary for the agency to determine whether it should institute a contested case proceeding. . . .* On contest, the court shall sustain the subpoena or similar process or demand to the extent that it is found to be in accordance with the law applicable to the issuance of subpoenas or discovery in civil actions . . . .

§ 17A.13(1), The Code (emphasis added). The Commission contends that these provisions authorize it to subpoena medical and personnel records to enable it to ascertain whether probable cause exists under section 601A.15 to implement a conciliation process designed to eliminate the alleged discriminatory practice—which, if unsuccessful, results in a contested case hearing. It argues that the trial court erred in not ordering unconditional production of the records at issue, which will be discussed in division II.

The City contends the records at issue are confidential under Iowa's freedom of information act, ch. 68A, The Code, which governs examination of "public records."[1] Section 68A.2 states the general policy concerning the right of examination:

Every citizen of Iowa shall have the right to examine all public records and to copy such records, and the news media may publish such records, unless some other provision of the Code expressly limits such right or requires such records to be kept secret or confidential. The right to copy records shall include the right to make photographs or photographic copies while the records are in the possession of the lawful custodian of the records . . . .

An exception to this general provision is contained in section 68A.7, the relevant portion of which provides:

The following public records shall be kept confidential, unless otherwise ordered by a court, by the lawful custodian

---

1. "Public records" is broadly defined to include "all records and documents of or belonging to this state or any county, city, township, school corporation, political subdivision, or tax-sup-

ported district in this state, or any branch, department, board, bureau, commission, council, or committee of any of the foregoing." § 68A.1, The Code.

of the records, or by another person duly authorized to release information:

. . . .

2. Hospital records and medical records of the condition, diagnosis, care, or treatment of a patient or former patient, including outpatient.

. . . .

11. Personal information in confidential personnel records of public bodies including but not limited to cities, boards of supervisors and school districts.

█ We do not believe the legislature intended section 68A.7 to be applicable to administrative subpoenas. The purpose of chapter 68A is to open the doors of government to public scrutiny—to prevent government from secreting its decision-making activities from the public, on whose behalf it is its duty to act. *See generally* Note, *Iowa's Freedom of Information Act: Everything You've Always Wanted to Know About Public Records but Were Afraid to Ask*, 57 Iowa L.Rev. 1163 (1972). The exemptions of section 68A.7 are narrowly tailored to specific circumstances in which the public interest would not be served by disclosure of information contained in the records and in which disclosure could cause a substantial adverse impact upon an individual. *Id.* at 1166. The exemptions are thus applicable only within the framework of "every citizen's" *general* right to examine public records under chapter 68A. In this case the Commission did not seek inspection as a "citizen" under chapter 68A; it sought inspection pursuant to its investigative powers granted by chapter 601A and the subpoena power granted to administrative agencies by section 17A.13(1).

Administrative agencies are normally invested with broad investigative powers to enable them to effectively carry out their legislative mandates. Agencies with authority to conduct investigations for the purpose of ascertaining probable cause for the institution of a contested case have powers comparable to those of a grand jury. *United States v. Powell*, 379 U.S. 48, 57, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112, 119 (1964); *United States v. Morton Salt Co.*, 338 U.S. 632, 642–43, 70 S.Ct. 357, 364, 94 L.Ed. 401, 411 (1950); *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 216, 66 S.Ct. 494, 509, 90 L.Ed. 614, 634 (1946); *Falsone v. United States*, 205 F.2d 734, 737 (5th Cir.), *cert. denied*, 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375 (1953). As previously noted, the Commission has investigative and accusatory powers. Courts have been cautious to interfere with agency subpoena powers except to preserve due process rights. *See Wilson & Co. v. Oxberger*, 252 N.W.2d 687, 688 (Iowa 1977).

While disclosure of records accorded confidential treatment under the freedom of information act by section 68A.7 may have a substantial adverse impact upon individuals, to hold that section 68A.7 is applicable to the administrative subpoena would contravene the public interest in redressing civil rights violations and frustrate the Commission's statutory investigative powers. Under the statutory provisions at issue, we perceive no intent on the part of the legislature to place the medical and personnel records of public employees in a more favorable position than those of private employees vis-à-vis the Commission under chapter 601A. Accordingly, we hold that section 68A.7(11) is inapplicable to the Commission's subpoena *duces tecum*.

We do note, however, that the Civil Rights Act prevents the Commission from unnecessarily disclosing information obtained during an investigation:

The members of the commission and its staff shall not disclose the filing of a complaint, the information gathered during the investigation, or the endeavors to eliminate such discriminatory or unfair practice by conference, conciliation, and persuasion, unless such disclosure is made in connection with the conduct of such investigation.

§ 601A.15(4), The Code.

II. *Validity of order.* The City claims the trial court exceeded its authority in fashioning the procedure requiring the City to give notice to the persons whose medical records were being sought and affording

such persons an opportunity to object to the subpoena. On appeal the Commission joins the City in this contention, although it agreed to the procedure at the hearing. The City bases its argument on section 68A.7, which we rejected in division I. The trial court specifically stated that it was attempting to protect the individuals whose records were being sought. We must determine whether the trial court had authority to provide such protection and, if so, whether it correctly exercised its authority.

■ In examining the court's authority, we must first determine whether the court had jurisdiction of this action. The Commission sought enforcement of its administrative subpoena, which it claims was issued pursuant to sections 601A.5(2) and 17A.13(1), The Code. However, neither party has indicated what statute or rule authorized the trial court to enforce the subpoena at issue. Despite this lack of guidance, we conclude that the trial court had authority to enforce the subpoena.

The Commission has the power to investigate discriminatory practices. § 601A.5(2)–(3), The Code. The Iowa Administrative Procedure Act provides statutory authority for an agency "to subpoena books, papers, records and any other real evidence necessary for the agency to determine whether it should institute a contested case proceeding." § 17A.13(1), The Code; see Wilson & Co., 252 N.W.2d at 689–90. The Act also provides the court with power to enforce such subpoenas "in accordance with the law applicable to the issuance of subpoenas or discovery in civil actions." § 17A.13(1), The Code. Although enforcement of a subpoena in a civil action is confined primarily to a contempt of court action, see § 622.76, The Code, which was not sought here, enforcement of discovery under the rules of civil procedure provides the court with authority to compel discovery, including the production and inspection of documents, etc. Iowa R.Civ.P. 134, 129. The trial court therefore had jurisdiction to enforce the Commission's subpoena.

Iowa R.Civ.P. 123 authorizes the court to "make any order which justice requires" to protect "any person who may be affected" by discovery. The rule allows the court to limit the scope of or prevent discovery. We therefore conclude the trial court had authority to issue a protective order to protect the rights of the persons whose medical records were being sought. We next turn to the question of whether the court correctly exercised its authority.

The trial court heard evidence concerning the medical records of city employees. The public health director testified that medical records of employees, which included a venereal disease clinic file, were kept separate from other employment records. To ensure security, the medical files were kept in a locked metal file cabinet at the employee health clinic, accessible only to the City's medical doctors and clinic staff. The clinic assists in employee selection by giving physical and mental examinations and serves as a treatment center for employees with respect to both job-related injuries and nonoccupational ailments. The medical files contain clinical notes of diagnosis and treatment of patients. The health director stated that the clinic would release medical records if an employee was referred elsewhere for treatment and the employee consented to the release.

■ We do not believe the trial court acted improperly in fashioning the protective procedures complained of. The evidence adduced at the hearing reveals that the records sought by the Commission may be subject to the physician-patient privilege provided by section 622.10, The Code, which states:

No ... physician, surgeon, or the stenographer or confidential clerk of any such person, who obtains such information by reason of his employment, ... shall be allowed, in giving testimony, to disclose any confidential communication properly entrusted to him in his professional capacity....

The physician-patient privilege is applicable to administrative proceedings, § 17A.14(1), The Code ("Agencies shall give effect to the rules of privilege recognized by law."), and

generally it must be asserted by the patient. *See State v. Knight*, 204 Iowa 819, 824, 216 N.W. 104, 107 (1927). *But see* Annot., 20 A.L.R.3d 1109–22 (1968) (discussing physician liability for disclosing confidential information). However, the persons whose medical records are sought were not parties to the enforcement action and had no opportunity to invoke the privilege. Under these circumstances, we hold that the trial court did not abuse its discretion by issuing the protective order to allow the persons affected to invoke the physician-patient privilege.

Our holding is limited to the medical records subpoenaed by the Commission. Since at the hearing the Commission agreed to allow the City Public Health Director and his staff to review the subpoenaed medical records and accumulate the records of those employees who had sustained injuries within the specified period, we intimate no view as to whether this is the preferable procedure.

We find no error and therefore affirm the action of the trial court.

AFFIRMED.