The CITY OF DUBUQUE, Iowa, A Municipal Corporation; James E. Brady; Rhonda Kronfeldt; Barbara Manning; W. Kenneth Gearhart; and Gent Wittenberg, Appellees,

v.

DUBUQUE RACING ASSOCIATION, LTD., Intervenor–Appellant,

v.

WOODWARD COMMUNICATIONS, INC., f/k/a Telegraph Herald, Inc., Appellant.

No. 87–76.

Supreme Court of Iowa.

March 16, 1988.

Rehearing Denied April 8, 1988.

Barry A. Lindahl, Dubuque, for appellees.

Stephen W. Scott of Kintzinger, Van Etten, Setter, Pearce & Scott, Dubuque, for intervenor-appellant.

Allan J. Carew of Fuerste, Carew, Coyle, Juergens & Sudmeier, Dubuque, for appellant.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, NEUMAN and ANDREASEN, JJ.

ANDREASEN, Justice.

This is an action for declaratory relief pursuant to Iowa Code section 22.10 (1985)[1]. The district court concluded that the minutes of the meetings of the board of directors and executive committee of the Dubuque Racing Association, Ltd. (DRA) were public records which were not exempt from inspection under Iowa Code section 22.7(18). The district court also found there was no violation of Iowa Code chapter 22 by the City of Dubuque, individual council members, mayor, city clerk or assistant city clerk (City), and denied the request of Woodward Communications, Inc. (Woodward) for an award of costs and attorney's fees. We affirm the court's order denying attorney fees and costs, but reverse the court's declaratory judgment that the minutes of the DRA meetings are public records.

## I. Background.

There was no dispute as to the material facts. The DRA is a private nonprofit corporation licensed to conduct dog races where parimutual wagering is permitted under Iowa Code chapter 99D. The DRA began in late 1982 or early 1983 as an informal committee to investigate the possibility of a race track in Dubuque. As the parimutuel law developed in Iowa, this informal group formed a nonprofit corporation to satisfy the requirements for a racing license under Iowa Code section 99D.8. This newly formed corporation selected its board of directors primarily from active members of the informal committee. Some members of the informal committee and the initial board of directors were also members of the Dubuque City Council. The DRA bylaws provided the number of directors would be not less than fifteen or more than twenty-one.

In 1984, the City of Dubuque issued 7.9 million dollars in general obligation bonds and additionally spent nearly two million dollars to build a dog racetrack and leased the facility to the DRA. The initial racetrack lease provided that DRA was responsible for debt service payments, including both principal and interest on the general obligation bonds. The lease also provided that DRA would maintain books of record relating to the operation of the racing facility and file with the City clerk copies of all applications or communications submitted to state commissions or agencies with respect to track operations or finance. Additionally, copies of the annual audit were to be filed with the city clerk.

In May of 1985, the City proposed a second addendum to the racetrack lease. This addendum provided for three positions on the DRA's board of directors to be reserved for city council members and one position to be reserved for the city manager or the city manager's designee. Prior to acceptance of the addendum, DRA adopted a bylaw that made the deliberations of the board of directors confidential. After this bylaw was adopted, the minutes of DRA board of directors and executive committee meetings were maintained in the DRA office and available for inspection by DRA board members, but were no longer delivered to them. Prior to acceptance of the second addendum in August of 1985, copies of minutes of the DRA meetings had been furnished to board members. The assistant city manager, who was on the DRA's board of directors, maintained copies of the

---

**1.** Unless otherwise designated, all references are to the Iowa Code 1985.

DRA board of director and executive committee meetings in the city manager's office. These copies are now in the physical possession of the city clerk.

On September 5, 1985, Woodward, through its daily newspaper, the Telegraph Herald, wrote a letter to the representatives of the City requesting the opportunity to examine the minutes of the meetings of the Board of Directors of the DRA. The City then filed a petition under Iowa Code section 22.10(4) to obtain a declaration of whether the minutes of the board meetings were public records and available to the public. The DRA joined this action as an intervenor.

## II. *Public Records.*

Iowa Code chapter 22, previously Iowa Code chapter 68A, has been identified as Iowa's Public Records Statute and Freedom of Information statute. Iowa Code section 22.2(1) provides that, "[e]very person shall have the right to examine and copy public records and to publish or otherwise disseminate public records or the information contained therein."

A governmental body cannot "prevent the examination or copying of a public record by contracting with a nongovernment body to perform any of its duties or functions." Iowa Code § 22.2(2). A public record is defined to include:

> all records, documents, tapes or other information, stored or preserved in any medium, *of or belonging to* this state or any county, city, township, school corporation, political subdivision, or tax-supported district in this state, or any branch, department, board, bureau, commission, council, or committee of any of the foregoing.

Iowa Code § 22.1 (emphasis added).

The purpose of Iowa's Freedom of Information Act is "to open the doors of government to public scrutiny—to prevent government from secreting its decision-making activities from the public, on whose behalf it is its duty to act." *Head v. Colloton,* 331 N.W.2d 870, 873–74 (Iowa 1983) (quoting *Iowa Civil Rights Comm'n v. City of Des Moines,* 313 N.W.2d 491, 495 (Iowa 1981)).

The act establishes a "liberal policy of access from which departures are to be made only in discrete circumstances." *Head,* 331 N.W.2d 523, 526 (Iowa 1980) ("It is plain that analysis must start from the premise that [the Iowa Freedom of Information Act] is to be interpreted liberally to provide broad public access to ... public records."). We must determine whether the minutes of the DRA board and executive committee meetings are public records as described in Iowa Code section 22.1.

By statutory definition, a public record is a record or document *of or belonging to* the state or local government. A document *of* the government is a document that was produced by or originated from the government. Documents *belonging to* the government would include those documents that originate from other sources but are held by public officers in their official capacity.

In *Howard v. Des Moines Register & Tribune Co.,* 283 N.W.2d 289, 299 (Iowa 1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980), we recognized that determining whether a document is a public record involves more than a consideration of the location of the document or analysis of properly rights. We stated that in order to "facilitate public scrutiny of the conduct of public officers, the statute generally permits public access to writing held by them in their official capacities, regardless of origin." *Id.; see also Bruner v. Varley,* 411 N.W.2d 150, 153 (Iowa 1987). In *Howard,* documents concerning the involuntary sterilization of a young woman in the Jasper County Home were furnished to the Governor of Iowa by private citizens. This information was furnished to the Governor with the intent of pointing out abuses in the Jasper County Home. After investigation by the State Health Department, the nursing and custodial licenses of the Jasper County Home were revoked. We held that the documents filed in the governor's office were public records. Upon his acceptance of custody, the documents were in the governor's lawful possession. The *Howard* court adopted the reasoning of *MacEwan v. Holm,* 226 Or. 27, 38, 359 P.2d 413, 418

(1961). In *MacEwan,* the Oregon Supreme Court stated:

> Writings coming into the hands of public officers in connection with their official functions should generally be accessible to members of the public so that there will be an opportunity to determine whether those who have been entrusted with the affairs of government are honestly, faithfully and competently performing their function as public servants.

*Id.* at 38, 359 P.2d at 418.

■ The issue before us is whether the minutes of the DRA board meetings *belong to* the City under Iowa Code section 22.1. To make this determination, we consider whether the city council members on the DRA board of directors were acting in their official capacity as public servants and whether disclosure of the minutes of the DRA board meetings will facilitate public scrutiny of the conduct of public officers. This decision does not turn on the physical location of the documents in question, rather, the appropriate inquiry is whether the documents are held by the city officials in their official capacity.

■ The DRA is a private nonprofit corporation in accordance with Iowa Code chapter 504A. Simply because members of a city council serve on the board of directors of a private nonprofit corporation, the affairs of the corporation do not become the affairs of the government. *Cf. Perlongo v. Iron River Coop. TV Antena Corp.,* 122 Mich.App. 433, 332 N.W.2d 502, 503–04 (1983) (Freedom of Information Act did not apply to private nonprofit corporation, although some city commission members were also on board of directors of the nonprofit corporations).

In the second addendum of the lease agreements, the City mandated that there was to be participation by city officials on DRA's board of directors. Woodward argues that mandatory participation on the DRA board of directors by City officials changes the relationship between the DRA and the City and makes the minutes of the board meetings public records because the City representatives are acting in their official capacity. Woodward cites *Washington Post Co. v. New York State Ins. Dep't,* 61 N.Y.2d 557, 475 N.Y.S.2d 263, 463 N.E.2d 604 (1984), for support. In *Washington Post,* the Court of Appeals of New York held that the minutes of the meetings of an insurance company's board of directors that were required, pursuant to state law, to be turned over to the state insurance department were public records. *Id.* at 566–67, 475 N.Y.S.2d at 266–67, 463 N.E.2d at 607–08. Although certain members of the city council have access to the minutes of the DRA board meetings, there is no statutory requirement or contractual provision that requires the DRA to provide copies of its board and executive committee meetings to the City. The relationship between the Dubuque City Council and the DRA is not analogous to the relationship between the State Insurance Department of New York and a New York insurance company. The State Insurance Department had a duty to regulate and supervise insurance companies. The City has no duty to regulate or supervise the racetrack licensee. The reasoning in *Washington Post* does not control in this decision.

The DRA asserts that the minutes kept for review in the corporation's office do not belong to the City. Their reasoning is based on the physical location of the minutes, as well as bylaw provisions requiring confidentiality among directors. Our analysis of whether the DRA minutes are public records is not determined by the physical location of the minutes or the bylaws adopted by the DRA.

■ At this point in our analysis, we must determine what the City of Dubuque's role is in connection with the DRA. The legislature did not provide for municipalities to become licensed to operate dog racing tracks. *See* Iowa Code § 99D.8. A nonprofit corporation can become a licensee to operate a dog racing track; a municipal corporation cannot. We infer from this provision that management of dog racing facilities was not to be an official function of municipal government. The City cannot alter this statutory design and transform a private nonprofit corporation into a govern-

mental body. The City is the owner of the racetrack. The DRA is licensed to conduct dog races on the racetrack and has leased the track from the City.

Furthermore, public examination of DRA board minutes will not facilitate public scrutiny of the conduct of the city council and city officials. Rather, the realistic effect of disclosure of the minutes will be to provide public scrutiny over the affairs of a private nonprofit corporation. This result is not intended by the Public Records Statute. Although members of the city council and the city manager may also serve as directors and committee members of the DRA, minutes of the DRA meetings are not documents that belong to the city.

This holding does not deprive the public of protection against government secrecy regarding the operation of the racetrack. Iowa law provides for public protection by state government supervision over operators of facilities for pari-mutuel wagering; see, e.g., Iowa Code §§ 99D.8 (application for a license); 99D.8A (requirements of applicant—consent to search), 99D.9 (terms, conditions, and revocation of license), 99D.20 (audit of license operations); 491 Iowa Admin.Code 5.1, 5.7–.11 (racing and gaming); public scrutiny of certain state agencies and commissions; see Iowa Code §§ 21.3, 22.1; see also 491 Iowa Admin.Code 1.4 (1987) (open records of Iowa Racing Commission); and regulation of certain aspects of nonprofit corporations, see Iowa Code § 504A.25 (Iowa nonprofit corporations are required to keep correct and complete books and records of accounts as well as minutes of proceedings of its members, board of directors, and committees; these books and records are subject to inspection by any member or the member's agent or attorney).

### III. Costs and Attorney Fees.

■ Initially, the trial court awarded costs and attorney's fees to Woodward. Upon the City's motion, the trial court modified the original order and deleted the award of costs and attorney's fees to Woodward.

Iowa law provides that costs and attorney fees shall be allowed to any plaintiff who successfully establishes a violation of the Public Records Act. Iowa Code 22.-10(3)(c). The law also provides that a custodian, in doubt about the legality of allowing the examination, is authorized to bring a suit in district court to ascertain the legality of any action. Iowa Code § 22.10(4).

Iowa Code section 22.8(4) expressly provides:

Good-faith, reasonable delay by a lawful custodian in permitting the examination and copying of a government record is not a violation of this chapter if the purpose of the delay is any of the following:

. . . .

c. To determine whether the government record in question is a public record, or confidential record.

Woodward is not entitled to recover costs and attorney fees because it failed to establish that the City was in violation of the Public Records Act.

We find the minutes of the meeting of the board of directors and executive committee of DRA are not records or documents of or belonging to the City. Woodward has no right under Iowa Code chapter 22 to require the City to produce and make available for examination or copying the minutes of the meetings of the DRA board or committee. The declaratory judgment of the district court is reversed.

REVERSED.