KMEG TELEVISION, INC., Appellant,

v.

The IOWA STATE BOARD OF REGENTS; the University of Iowa; C.W. Elliott; Larry Bruner; Dorsey D. Ellis, Jr.; George Wine; and Rasmussen Communications Management Corporation, Appellees.

No. 88–636.

Supreme Court of Iowa.

May 17, 1989.

Rehearing Denied June 8, 1989.

D.G. Ribble and Wilford H. Stone of Lynch, Dallas, Smith & Harman, Cedar Rapids, and T.M. Whicher, Sioux City, for appellant.

Thomas J. Miller, Atty. Gen., and Merle Wilna Fleming, Asst. Atty. Gen., for appellees Iowa State Bd. of Regents, The University of Iowa, C.W. Elliott, Larry Bruner, Dorsey D. Ellis, Jr., and George Wine.

Brent R. Appel and Gayla R. Harrison of Dickinson, Throckmorton, Parker, Mannheimer & Raife, P.C., Des Moines, for appellee Rasmussen Communications Management Corp.

Considered by HARRIS, P.J., and LARSON, NEUMAN, SNELL and ANDREASEN, JJ.

NEUMAN, Justice.

In 1987, appellant KMEG Television, Inc. lost out on its bid to become part of the Hawkeye Sports Network. This is an appeal from its unsuccessful attempt to compel disclosure of what other TV stations bid and paid for a one-year contract to telecast the Hawkeyes. KMEG frames the issue broadly: Are bids submitted for the purchase of public property subject to examination under Iowa Code chapter 22, the Freedom of Information Act? The district court, viewing the issue more narrowly, said "no," concluding that the bids at issue were neither public records nor in the control of a public body. We affirm.

The material facts are undisputed. Following a complex bidding process (not challenged here), defendant University of Iowa hired defendant Rasmussen Communications Management Corporation (Rasmus-

sen) to provide marketing and broadcast production services for the University's intercollegiate athletic program during the 1987–88 academic year. As originally negotiated, the contract called for Rasmussen to receive a fixed fee of nearly $600,000 for its management and production services, with all advertising revenues (anticipated in the range of $1,500,000) payable directly to the University. Because of unfavorable tax consequences resulting from the University's receipt of this unrelated business income, however, the parties promptly renegotiated their agreement to provide for a one-year sale of the broadcast rights for $1,300,000.

As part of its contract with the University, Rasmussen agreed to establish a network of stations "covering at least 75% of the State's population" for the purpose of broadcasting those football and basketball games not televised by CBS, ABC, ESPN and the Big Ten Network. Thus Rasmussen solicited proposals from television stations to determine which local broadcasters should participate in what Rasmussen called the Hawkeye Sports Network. KMEG submitted a proposal, but Rasmussen selected one of KMEG's competitors in the Sioux City market.

Disappointed that its bid had been rejected, KMEG informally requested the University and Rasmussen to disclose all bid documents submitted by local stations seeking participation in the network. From the outset, University officials denied the request on the ground that the University took no part in the bidding process, having sold its broadcast rights to Rasmussen. Rasmussen denied the request as an unwarranted intrusion into the affairs of a private corporation.

KMEG then brought suit to compel disclosure of the documents pursuant to Iowa Code chapter 22 (1987), Iowa's examination of public records statute. The defendants filed affirmative defenses elaborating on their respective positions outlined above. Eventually the parties filed cross-motions for summary judgment. The district court entered judgment for the defendants, ruling that the documents sought by KMEG

"do not belong to, nor have they ever belonged to, the University of Iowa. Thus, the documents ... are not public records" and chapter 22 has no application. It is from this order that KMEG now appeals.

■ Customarily our review of an action brought under chapter 22 would be de novo, the nature of the action being that of mandamus, triable in equity. *See* Iowa Code §§ 22.5, .10, 661.3; *Bruner v. Varley*, 411 N.W.2d 150, 153, 155 (Iowa 1987); *Head v. Colloton*, 331 N.W.2d 870, 872 (Iowa 1983). The parties' first dispute is over the applicability of that standard here, inasmuch as KMEG filed its petition at law. *See Beckman v. Carson*, 372 N.W.2d 203, 206 (Iowa 1985) (review is at law, not de novo, where case filed and tried as action at law). The dispute is of no consequence, however, because the matter is before us on appeal from entry of summary judgment. Thus our task is to determine only whether a genuine issue of material fact exists and whether the trial court correctly applied the law. *Adam v. Mount Pleasant Bank & Trust Co.*, 355 N.W.2d 868, 872 (Iowa 1984). Having determined that no factual dispute exists, we turn to the court's application of the law.

■ KMEG correctly asserts that any discussion of the scope of chapter 22 must start from the premise that its provisions are " 'to be interpreted liberally to provide broad public access to ... public records.' " *City of Dubuque v. Dubuque Racing Ass'n, Ltd.*, 420 N.W.2d 450, 452 (Iowa 1988) (quoting *Head*, 331 N.W.2d at 526). Before applying the statute's remedial measures, however, a court must answer the threshold question of whether the records in controversy are in fact "public records." *See id.; see also Iowa Civil Rights Comm'n v. City of Des Moines*, 313 N.W.2d 491, 494–95 (Iowa 1981). As we see it, that is the decisive question in this case.

Iowa Code section 22.1 defines "public records" to include

all records ... or other information ... *of or belonging to* this state or any county, city, township, school corporation ...

or any branch ... of any of the foregoing.

(Emphasis added.) In our recent *Dubuque* decision, we focused on the statutory phrase "of or belonging to" as we attempted to discern the legislative intent underlying section 22.1. Relying on the plain meaning of the words, we determined that records "of" the government are those that are produced in, or originate from, the government. *Dubuque,* 420 N.W.2d at 452. We then noted that documents "belonging to" the government are those that "originate from other sources but are held by public officers in their official capacity." *Id.; see Howard v. Des Moines Register & Tribune Co.,* 283 N.W.2d 289, 299 (Iowa 1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980) (public records act authorizes access to writings held by public officials regardless of origin). Because the public documents sought in *Dubuque* were the minutes of a private nonprofit corporation hired to manage the Dubuque race track, and not documents *of* or otherwise *belonging to* the city itself, we held the minutes were not "public records" and that chapter 22 furnished no means of access to them. *Id.* at 454.

■ Applying this "of or belonging to" test to the present case yields a similar result. There is no dispute over the fact that the written bid proposals KMEG seeks are not now, nor have they ever been, in the possession of the University. Rasmussen, a private corporation, solicited the bids and oversaw the bidding procedure as part of its contractual obligation to create a sports network. The records, if any, kept in connection with that endeavor have not been shared with the University. Neither has the University indicated an interest in having or reviewing them. Under its contract with Rasmussen, all network revenues inured to Rasmussen's benefit in consideration of its payment of a hefty sum to the University up front.

■ Failing the "of or belonging to" test, KMEG argues alternatively that the records *should* belong to the University. It claims that a contract of this magnitude, involving a sale of "public property,"

should be open to public scrutiny. Whatever merit this argument holds as a matter of principle, however, avails KMEG nothing in an action brought under chapter 22.

■ The contract between the University and Rasmussen was openly bid, constitutes a public record, and has been disclosed. Rasmussen's private negotiations with its "subcontractors," on the other hand, are not necessarily a proper subject of public scrutiny. Simply because a government agency contracts with a private corporation, the affairs of the corporation do not become the affairs of the government. *See Dubuque,* 420 N.W.2d at 453; *see also Parsons & Whittemore, Inc. v. Metropolitan Dade County,* 429 So.2d 343, 346 (Fla.App.1983) (private corporation's mere contract with a public agency not equivalent to acting "on behalf of" agency for public records act purposes).

Closely linked with KMEG's latter argument is its contention that Iowa Code section 22.2(2) precludes the sort of record concealment complained of here. That section states:

A government body shall not prevent the examination or copying of a public record by contracting with a nongovernment body to perform any of its duties or functions.

Iowa Code § 22.2(2). When read in harmony with preceding subsection 22.2(1) (authorizing the right of "[e]very person ... to examine and copy public records"), we think the statute conveys an obvious legislative intent to prevent government agencies from accomplishing indirectly what they are prevented from doing directly. In other words, a government body may not delegate or "contract away" its duties or functions in order to avoid disclosure of what would otherwise be a public record.

■ Establishing a violation of section 22.2(2) thus involves a two-step process: (1) proof by the party seeking disclosure that a government body has delegated one or more of its duties or functions to a nongovernmental entity; and (2) proof by the government agency that the delegation, if any, was not for the purpose of preventing the examination or copying of a public

record. Like the district court, we find KMEG failed in its proof under the first prong of the test.

The question is whether the marketing and production of intercollegiate sports television broadcasts is a government "duty or function[ ]." Iowa Code § 22.2(2). By statute, the general role or "object" of the University of Iowa is "to provide the best and most efficient means of imparting to men and women ... a liberal education and thorough knowledge of the different branches of literature and the arts and sciences, with their varied applications." Iowa Code § 263.1. As KMEG correctly notes, we have held that a state university advances its statutory objects and exercises governmental powers when it directs and administers its intercollegiate athletic program. *Greene v. Athletic Council of Iowa State University*, 251 N.W.2d 559, 561–62 (Iowa 1977).

We think it a long leap, however, from administration of an athletic program to network television broadcasting of intercollegiate sports events. That undertaking is not one reasonably embraced by the statutory duty of the University. Nor does the record suggest that it is a function capable of performance by the school. That is precisely the reason a professional network management corporation was engaged.

Because the record does not support a claim of delegation of duty or function, we need not consider the second prong of the test to be applied under section 22.2(2). We note, however, that the record is devoid of any evidence of purposeful, or even unintentional, avoidance of public record disclosure through the use of this contract.[1]

In summary, we agree with the district court's conclusion that the network bid proposals received by Rasmussen in connection with its contract with the University were neither public records as defined in Iowa Code section 22.1 nor subject to disclosure under section 22.2(1) or (2). Accordingly, we affirm the judgment of the district court.

AFFIRMED.

---

1. By written admission filed as part of the summary judgment record, KMEG conceded that the purpose of this contract was to provide the University with telecommunication services it was otherwise incapable of handling in-house.