# IN THE COURT OF APPEALS OF IOWA

No. 18-1068
Filed July 3, 2019

**DR. ALLEN DIERCKS,**
        Plaintiff-Appellant,

**vs.**

**THE CITY OF BETTENDORF, IOWA, and KRISTINE STONE,**
        Defendants-Appellees.
_____

Appeal from the Iowa District Court for Scott County, Mary E. Howes, Judge.

Allen Diercks appeals the denial of his claim based on the defendants' alleged failure to provide documents pursuant to the Iowa Open Records Act. **REVERSED AND REMANDED.**

Michael J. Meloy of Meloy Law Office, Bettendorf, for appellant.

Sean M. O'Brien and Catherine M. Lucas of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellees.

Alan R. Ostergren of Muscatine County Attorney's Office, Muscatine, amicus curiae.

Heard by Tabor, P.J., and Mullins and Bower, JJ.

**BOWER, Judge.**

Allen Diercks appeals the district court's denial of his claim based on the alleged failure of the City of Bettendorf and City Attorney Kristine Stone to provide documents pursuant to Iowa Code chapter 22 (2017) (the Iowa Open Records Act). Because the district court erred in concluding the records requested were not public records, we reverse and remand for further proceedings. We leave it to the district court on remand to consider the City's claims of privilege and that statutory exceptions to disclosure exist.

**I. Statutory Provisions.**

Pursuant to Iowa Code section 22.10, "Any aggrieved person, any taxpayer to or citizen of the state of Iowa . . . may seek judicial enforcement of the requirements of this chapter in an action brought against the lawful custodian and any other persons who would be appropriate defendants under the circumstances." A requester has the burden to prove by a preponderance of the evidence (1) "the defendant is subject to the requirements of chapter 22," (2) "the records in question are government records," and (3) "the defendant refused to make those government records available for examination and copying by the plaintiff." Iowa Code § 22.10(2); *Diercks v. Malin*, 894 N.W.2d 12, 18 (Iowa Ct. App. 2016).

**II. Background Facts and Proceedings.**

Diercks is a taxpayer and resident of Bettendorf. The City of Bettendorf is subject to chapter 22. Kristine Stone was the Bettendorf city attorney and the

"lawful custodian" responsible for implementing the open-records requests.[1] We may refer to Bettendorf and Stone collectively as the City.

The Iowa Communities Assurance Pool (ICAP) is a government risk pool as allowed under Iowa Code section 670.7. Bettendorf entered into a contract with ICAP and has paid ICAP for the defense of tort claims against the City.

ICAP hired Michael Walker of Hopkins & Huebner, P.C., to defend the City in lawsuits concerning its sewer system filed between August 14, 2013, and January 27, 2017.

On May 24, 2017, Diercks hand-delivered a "Chapter 22 Request for Public Records" to Stone requesting from the City: "All itemized fee statements submitted from Attorney Michael C. Walker and/or Hopkins & Huebner, P.C. to the [ICAP] or the City of Bettendorf, Iowa for legal services rendered to the City from August 14, 2013 through January 27, 2017." Diercks also wrote, "If you redact any information please state any reasons for that redaction."

On June 8, 2017, Stone provided Diercks Bate-stamped pages 01–335 of billing statements.[2] Stone wrote:

---

[1] Iowa Code section 22.1(2) defines the "lawful custodian" as including:

> The custodian of a public record in the physical possession of persons outside a government body is the government body owning that record. . . . Each government body shall delegate to particular officials or employees of that government body the responsibility for implementing the requirements of this chapter and shall publicly announce the particular officials or employees to whom responsibility for implementing the requirements of this chapter has been delegated.

Iowa Code § 22.1(2).

[2] The billing statements provided to Diercks contained four columns of entries. Redactions were made to three of the column entries: (1) the "description of services" column entries, (2) the "hours" column entries and (3) the "amount" column entries of each billing statement. Diercks asserts more than 2000 redactions were made to the billing statements before they were provided to him.

The redactions noted on these documents are pursuant to the attorney-work product doctrine and attorney-client privilege. These redactions are appropriate pursuant to Iowa Code section 22.7(4). We are withholding additional documents as wholly confidential. This includes a three-page invoice that is not only attorney-work product and attorney-client privilege, but also confidential pursuant to Iowa Code section 22.7(11). Moreover, there was one responsive invoice that is wholly confidential pursuant to Iowa Code section 22.7(4) because it is related to pending litigation."

Diercks was charged $16.80 for the production.[3]

On September 7, 2017, Diercks filed a petition pursuant to chapter 22 requesting the court:

(a) declare the requested itemized fee statements from Hopkins & Huebner, P.C. and Attorney Michael C. Walker are public records pursuant to Iowa Code chapter 22 and contain multiple illegal redactions to these public records;

(b) produce all of the public records without redactions or with valid redactions requested pursuant to [Diercks] May 24, 2017 public records request including all the requested itemized statements from Hopkins & Huebner, P.C. and Attorney Walker;

(c) find that [the City's] claim of privileges or rights to confidential information do not exist or were waived by [the City]. *Riverdale v. Diercks,* 806 N.W.2d 643 (Iowa 2011).

(d) find that [Bradshaw, Fowler, Proctor & Fairgrave, P.C.] could not redact these records;

(e) pay all costs and reasonable attorney fees as mandated by § 22.10(3)(c) of the Iowa Code;

(f) assess damages against Stone pursuant to § 22.10(3)[(b)].

The City admitted it entered a local risk pool with ICAP; ICAP retained Walker of Hopkins & Huebner to defend Bettendorf in lawsuits filed between August 14, 2013, and January 27, 2017; "Bettendorf accepted the legal representation of Mr. Walker provided pursuant to the ICAP's local government risk pool"; and the City had received an open-records request from Diercks

---

[3] Stone stated, "[T]here is a charge of $0.20 per page for copies. The fee to respond to his request is therefore as follows: 168 pages x$0.20=$33.60/2=$16.80."

"pertain[ing] to fees statements for legal work completed by Hopkins for Bettendorf." The City also admitted the fee statements "contained some redactions consistent [with] Iowa law" and "affirmatively state[d] the redacted portions of the records are confidential pursuant to Iowa Code section 22.7." The City claimed several affirmative defenses, including that "the requested invoices for legal services provided pursuant to a local government risk pooling agreement are not public records."[4]

The City filed a motion for summary judgment, asserting the records requested are not public records. In its brief in support of summary judgment, the City asserted: "Bettendorf was under no legal obligation to produce anything not in its possession." It asserted:

> It is undisputed Bettendorf did not have nor had it ever seen the invoices Hopkins and Huebner submitted to ICAP until they were requested by [Attorney] Meloy. They are not "of or belonging to" Bettendorf and therefore are not public records subject to disclosure at all. . . . Moreover, the Legal Defense and Claim Payment Agreement between Bettendorf and ICAP supports the undisputed understanding that the billing records submitted to ICAP are not Bettendorf's records.

---

[4] Other affirmative defenses included failure to state a claim and:
      (3) Some of the requested records contain attorney work product pursuant to Iowa Code § 22.7(4), and, therefore, as not subject to disclosure.
      (4) Some of the requested records contain confidential information pursuant to Iowa Code § 22.7(11), as well as other areas of Iowa law, and, therefore, as not subject to disclosure.
      (5) Defendants have a reasonable and good-faith belief they complied fully with the requirements of Iowa Code chapter 22.
      (6) Defendants reasonably relied upon a decision of a court in determining compliance with the requirements of Iowa Code chapter 22.
      (7) Defendants reasonably relied upon the advice of counsel in determining compliance with the requirements of Iowa Code chapter 22.
      (8) Defendants are immune from suit under the Iowa Municipal Tort Claims Act found in Iowa Code chapter 670.

The City provided the court with a paragraph from its contract with ICAP:

### N. PRIVILEGED COMMUNICATIONS

The *member* and the *Pool* shall be considered as co-clients of the assigned defense counsel and claims service providers engaged by the *Pool* hereunder. Communications between the *member* and defense counsel shall be deemed privileged and confidential information of both the *Pool* and the *member.* Communications between and among the *Pool's* administrator, defense counsel, claims service provider or other consultants shall be deemed privileged and confidential information of the *Pool* exclusively.

Alternatively, the City contended that if the records requested were public records, they were excepted from disclosure under Iowa Code section 22.7(4) (attorney work-product) and/or section 22.7(6) (reports of a government agency which if released would give advantage to a competitor) or the attorney-client privilege. The City also asserted it had substantially complied with the requirements of chapter 22.

After argument, the district court held the documents were not public records because they were not "of or belonging to" the City. The court reasoned:

[Diercks] asserts that Bettendorf delegated the duty to defend itself and its employees from tort liability to ICAP, and therefore ICAP is a nongovernment custodian of public records as discussed in Iowa Code section 22.2(2) and *Gannon* [*v. Bd. of Regents*, 692 N.W.2d 31 (Iowa 2005)]. However, [Diercks] concedes that the relationship between Bettendorf and ICAP was not interwoven and symbiotic like the relationship in *Gannon.*

The billing statements were not produced by, nor did they originate from, the City of Bettendorf, and therefore the statements are not documents *of* the City. Bettendorf was not provided the unredacted billing statements, and public officers did not hold the unredacted billing statements in their official capacity. The billing statements were instead produced by Walker and provided to and held by ICAP.

The City contracted with ICAP, a local-government risk pool, to limit its tort liability as permitted by Iowa Code section 670.7(1). Pursuant to the contractual agreement, ICAP undertook the City's legal defense in exchange for payment of a deductible. The

relationship between ICAP and Bettendorf was analogous to that of an insurer and insured, and was not the result of an elaborate contractual agreement leading to an interwoven and symbiotic relationship as contemplated by Iowa Code section 22.2(2) and *Gannon.*

The court finds the billing statements are not records of or belonging to the City. For that reason, the billing statements are not public records subject to disclosure under Iowa Code chapter 22.

The district court granted the City summary judgment. It did not rule on pending motions by Diercks to compel, or by the City to quash depositions of ICAP representatives. Nor did the district court reach any claims of statutory exceptions to disclosure.

Diercks appeals.

## III. Scope and Standard of Review.

Because this matter is before us on appeal from entry of summary judgment, our task is to determine whether a genuine issue of material fact exists and whether the district court correctly applied the law. *Gannon*, 692 N.W.2d at 37.

We view the record in the light most favorable to the resisting party, affording that party all reasonable inferences that the record will bear. In sum, we indulge in every legitimate inference that the evidence will bear in an effort to ascertain the existence of a fact question. An inference is legitimate if it is rational, reasonable, and otherwise permissible under the governing substantive law. On the other hand, an inference is not legitimate if it is based upon speculation or conjecture.

The burden of showing the nonexistence of a fact question rests with the moving party. If reasonable minds may differ on the resolution of an issue, a genuine issue of material fact exists.

*Id.* (citation omitted).

**IV. Analysis.**

"Iowa's Open Records Act, codified in chapter 22 of the Iowa Code, grants citizens the right to examine and copy records maintained by the State and other local governmental bodies supported by citizens' property tax revenue." *Sysco Iowa, Inc. v. Univ. of Iowa*, 889 N.W.2d 235, 237 (Iowa Ct. App. 2016); *see* Iowa Code § 22.2(1) ("Every person shall have the right to examine and copy a public record and to publish or otherwise disseminate a public record or the information contained in a public record."). The purpose of chapter 22 is "to open the doors of government to public scrutiny—to prevent government from secreting its decision-making activities from the public, on whose behalf it is its duty to act." *Iowa Civil Rights Comm'n v. City of Des Moines*, 313 N.W.2d 491, 495 (Iowa 1981).

"The right of persons to view public records is to be interpreted liberally to provide broad public access to public records." *Rathmann v. Bd. of Dirs. of the Davenport Cmty. Sch. Dist.* 580 N.W.2d 773, 777 (Iowa 1998); *accord Gannon*, 692 N.W.2d at 38; *KMEG Television, Inc. v. Iowa St. Bd. of Regents*, 440 N.W.2d 382, 384 (Iowa 1989). "Disclosure is the rule, and one seeking the protection of one of the statute's exemptions bears the burden of demonstrating the exemption's applicability." *City of Riverdale*, 806 N.W.2d at 652 (quoting *Clymer v. City of Cedar Rapids*, 601 N.W.2d 42, 45 (Iowa 1999)). "Exceptions to the general rules of disclosure are to be narrowly construed." *Gannon*, 692 N.W.2d at 38; *accord Iowa Film Prod. Servs. v. Iowa Dep't of Econ. Dev.*, 818 N.W.2d 207, 219 (Iowa 2012).

This rule of disclosure is statutorily reinforced in section 22.2(2), which provides, "A government body shall not prevent the examination or copying of a

public record by contracting with a nongovernment body to perform any of its duties or functions." *See Gannon*, 692 N.W.2d at 43.

***A. Arguments.*** Diercks asserts the court erred in determining the records requested were not public records because it is a function of the City to defend against tort liability and it had access to and an obligation to disclose ICAP's billing records created in connection with the City's legal defense. Diercks contends the redactions amounted to a refusal to provide public records. He also argues billing records are not privileged or confidential communications and, even if they are, the City waived any privilege claims by allowing ICAP full access to the records.

The City continues to assert the fee statements were not "of or belonging to" Bettendorf and thus it was under no obligation to produce them. It asserts the communications between ICAP and defense counsel are privileged under its contract with ICAP. The City also asserts that its financial input to ICAP was in the amount of a $10,000 deductible, it informed Diercks of that financial outlay, and "Diercks knows the $10,000 was spent efficiently without seeing the redacted descriptions because Hopkins and Huebner billed ICAP much more than the $10,000 deductible." The City maintains that even if the records are public records, "the redactions were appropriate under Iowa law."

The supreme court accepted an amicus curiae brief from the Iowa County Attorneys Association and the Iowa State Association of Counties. These associations seek a determination under the supreme court rulings in *KMEG* and *Gannon* that "when a public body has engaged in an arms-length transaction with a private entity there is no obligation on that private entity to comply with chapter 22 (and, correspondingly, no obligation for the public body to make it comply)."

***B. Statutory Interpretation.*** There is no dispute the City is subject to chapter 22 as it is a "government body" under section 22.1(1). The question we must answer is "whether the records in controversy are in fact 'public records.'" *KMEG*, 440 N.W.2d at 384.

> In interpreting statutes, our ultimate goal is to determine legislative intent. When the language of a statute is plain and its meaning is clear, we should not reach for meaning beyond its express terms. Nor should we resort to statutory rules of construction to determine legislative intent. When the statute's language is not clear and plain, we do resort to well-established rules of statutory construction. One such rule provides that we are bound by what the legislature said, rather than what it should or might have said. We may not, under the guise of statutory construction, enlarge or otherwise change the terms of a statute. Finally, "[w]e may consider the language used in the statute, the objects sought to be accomplished, the evils and mischiefs sought to be remedied and place a reasonable construction on the statute which will best effect its purpose rather than one which will defeat it."

*City of West Branch v. Miller*, 546 N.W.2d 598, 602 (Iowa 1996) (citations omitted).

We begin with the words of the statute. Iowa Code section 22.1(3) defines public records:

> (a) "Public records" includes all records, documents, tape, or other information, stored or preserved in any medium, *of or belonging to* . . . any . . . city . . . or tax-supported district in this state, or any branch, department, board, bureau, commission, council, or committee of any of the foregoing.
> (b) "Public records" also includes all records relating to the investment of public funds including but not limited to investment policies, instructions, trading orders, or contracts, whether in the custody of the public body responsible for the public funds or a fiduciary or other third party.

(Emphasis added.)

The supreme court has explored the contours of the phrase—"of or belonging to"—in several cases. In *City of Dubuque v. Dubuque Racing Ass'n,*

*Ltd.*, 420 N.W.2d 450, 452 (Iowa 1988),[5] the court relied upon the plain meaning of the words and determined: "A document *of* the government is a document that was produced by or originated from the government. Documents *belonging to* the government would include those documents that originate from other sources but are held by public officers in their official capacity."

The records requested were the minutes of the Dubuque Racing Association (DRA), "a private nonprofit corporation in accordance with Iowa Code chapter 504A [(Iowa Nonprofit Corporation Act)]" hired to manage the Dubuque race track. *Dubuque Racing*, 420 N.W.2d at 453.

> To make this determination, we consider whether the city council members on the DRA board of directors were acting in their official capacity as public servants and whether disclosure of the minutes of the DRA board meetings will facilitate public scrutiny of the conduct of public officers. This decision does not turn on the physical location of the documents in question, rather, the appropriate inquiry is whether the documents are held by the city officials in their official capacity.

*Id.*

The court observed, "The City has no duty to regulate or supervise the racetrack licensee." *Id.* Moreover,

> [t]he legislature did not provide for municipalities to become licensed to operate dog racing tracks. A nonprofit corporation can become a licensee to operate a dog racing track; a municipal corporation cannot. We infer from this provision that management of dog racing facilities *was not to be an official function* of municipal government.

---

[5] At the time *Dubuque Racing* was decided, section 22.1 provided, in pertinent part:
> Whenever used in this chapter, "public records" include all records, documents, tapes or other information, stored or preserved in any medium, of or belonging to this state or any county, city, township, school corporation, political subdivision, or tax-supported district in this state, or any branch, department, board, bureau, commission, council, or committee of any of the foregoing.

Iowa Code § 22.1 (1985).

*Id.* (emphasis added). The court also observed "public examination of DRA board minutes will not facilitate public scrutiny of the conduct of the city council and city officials." *Id.* at 454. Additionally, "public scrutiny over the affairs of a private nonprofit corporation" was not the intended result of the public records statutes. *Id.* The court concluded, "Although members of the city council and the city manager may also serve as directors and committee members of the DRA, minutes of the DRA meetings are not documents that belong to the city" and chapter 22 furnished no means to access them. *Id.*

In *KMEG*, the court again applied the "of or belonging to" test in considering whether the records of Rasmussen Communications Management Corporation were public records:

> There is no dispute over the fact that the written bid proposals KMEG seeks are not now, nor have they ever been, in the possession of the University. Rasmussen, a private corporation, solicited the bids and oversaw the bidding procedure as part of its contractual obligation to create a sports network. The records, if any, kept in connection with that endeavor have not been shared with the University. Neither has the University indicated an interest in having or reviewing them. Under its contract with Rasmussen, all network revenues inured to Rasmussen's benefit in consideration of its payment of a hefty sum to the University up front.

440 N.W.2d at 385.[6]

However, the court also examined the import of Iowa Code section 22.2(2). *Id.*

---

[6] After the *Dubuque Racing* and *KMEG* decisions, the legislature amended the definitional provision to include the records of "facilities or indebtedness are supported in whole or in part with property tax revenue and which is licensed to conduct pari-mutuel wagering pursuant to chapter 99D, or tax-supported district in this state, or any branch, department, board, bureau, commission, council, or committee of any of the foregoing." 1991 Iowa Acts ch. 258, § 27, now codified at Iowa Code § 22.1(3)(a).

> Closely linked with KMEG's . . . argument is its contention that Iowa Code section 22.2(2) precludes the sort of record concealment complained of here. That section states:
>
> > A government body shall not prevent the examination or copying of a public record by contracting with a nongovernment body to perform any of its duties or functions.
>
> Iowa Code § 22.2(2). When read in harmony with preceding subsection 22.2(1) (authorizing the right of "[e]very person . . . to examine and copy public records"), we think the statute conveys an obvious legislative intent to prevent government agencies from accomplishing indirectly what they are prevented from doing directly. In other words, a government body may not delegate or "contract away" its duties or functions in order to avoid disclosure of what would otherwise be a public record.

*Id.*

The *KMEG* court asked whether the "marketing and production of intercollegiate sports television broadcasts" was a "duty or function" of government. *Id.* at 386. The court acknowledged "a state university advances its statutory objects and exercises governmental powers when it directs and administers its intercollegiate athletic program." *Id.* (citing *Greene v. Athletic Council of Iowa St. Univ.*, 251 N.W.2d 559, 561–62 (Iowa 1977)). Nonetheless, the supreme court found the function of administering an intercollegiate athletic program "a long leap" from the function of operating a "network television broadcasting of intercollegiate sports events." *Id.* Consequently, the *KMEG* court concluded "the network bid proposals received by Rasmussen in connection with its contract with the University were neither public records as defined in Iowa Code section 22.1 nor subject to disclosure under section 22.2(1) or (2)." *Id.*

Taken together, these cases provide a framework: We look to whether the records requested are "of or belonging to" a covered governmental body under section 22.1, or whether records are held by a nongovernment body with which the

government body has contracted "to perform any of its duties or functions" under section 22.2(2).

The supreme court was tasked with deciding whether records of a private corporation that managed private gift support for the exclusive benefit of a state university were "public records." *Gannon*, 692 N.W.2d at 33. There, the district court relied on a federal statute to determine solicitation and management of private donations was not a duty or function of a state university. *Id.* at 40. The supreme court "reject[ed] such a narrow and archaic interpretation of the function of a university," which it stated was "based on an overly restrictive reading of our *KMEG* decision." *Id.* The supreme court stated, "An activity need not be listed in the statute books to be a function of a university." *Id.* Rather, "[t]o qualify, the activity at issue need only advance the statutory objects of the institution." *Id.* The court noted, "Successful fundraising and management is a very important, if not vital, function of the modern university and an integral part of its continuing viability." *Id.* at 41. The court pointed out the activities of the Foundation supported scholarships, projects, and facilities. *Id.* It concluded, "[T]he solicitation and receipt of donations for the university, and keeping records of that activity, are government functions," which the legislature had recognized by granting authority to do so to the Board of Regents. *Id.* (citing Iowa Code § 262.8).

The *Gannon* court determined the University and the Board of Regents had "contracted away" one of its functions, avoiding disclosure of public records and "accomplish[ing] indirectly what [they] are prevented from doing directly," a result expressly prevented the Open Records Act. *Id.* at 42. "Therefore the Foundation's records remain subject to disclosure even if it is no longer a government body." *Id.*

(citing Iowa Code § 22.2(2)).[7]  The court again stressed the "liberal reading" to be given the Open Records Act, which is also referred to as the Iowa Freedom of Information Act.  *Id.* at 43.

*C. Application of* **KMEG-Gannon** *framework*.  Are the fee statements of ICAP requested "of or belonging to" a covered governmental body under section 22.1 or records held by a nongovernment body with which the government body has contracted "to perform any of its duties or functions" under section 22.2(2)?

Here, the district court stated:

> The billing statements were not produced by, nor did they originate from, the City of Bettendorf, and therefore the statements are not documents *of* the City.  Bettendorf was not provided the unredacted billing statements, and public officers did not hold the unredacted billing statements in their official capacity.  The billing statements were instead produced by Walker and provided to and held by ICAP.

The court thus concluded the fee statements requested were not "of or belonging to" the City.

The City generally defends the district court's reasoning and argues it never had possession of unredacted billing records, which were exclusively under the control of ICAP pursuant to the contract.  We agree with the district court the records requested were not *of* the City nor *belonging to* the City, as those terms are used in *Dubuque Racing*, 420 N.W.2d at 452.  Thus, they do not constitute

---

[7] The *Gannon* court disavowed dicta in *KMEG* that consideration of the subjective intent of the government body in outsourcing is duties or functions was relevant to the analysis. 692 N.W.2d at 42.  The court stated "our holding in [*KMEG*] was expressly limited to a finding that no function was in fact delegated."  *Id.*

"public records" under section 22.1(3)(a). However, our inquiry does not end there.[8]

The City asserts the "district court was correct in holding it had *no* legal obligation to produce anything not in its possession." This contention would require that we ignore at least two code provisions: Iowa Code section 22.1(3)(b) ("'Public records' also includes all records relating to the investment of public funds . . . whether in the custody of the public body . . . or a fiduciary or other third party.") and section 22.2(2) ("A government body shall not prevent the examination or copying of a public record by contracting with a nongovernment body to perform any of its duties or functions."). We do not ignore those provisions. "As written, Iowa Code section 22.2(2) plainly extends the Act's reach to records held by private entities that perform government duties or functions." *Gannon*, 692 N.W.2d at 43.

Diercks asserts this statement in *Gannon* means section 22.2(2) extends to "records held by private entities that perform *any* governmental duty or function." This reading of *Gannon* is overly broad. The *Gannon* court itself provided the caveat, "Not every private entity performing an activity that may be characterized as a government function in theory must open its doors to public scrutiny. Cases must also be viewed in their factual context." *Id.*

---

[8] The City contends Diercks has not adequately preserved the question of whether the records are public records under Iowa Code section 22.1(3)(b) or otherwise subject to disclosure under section 22.2(2). We do not agree. Diercks argued those issues below. ICAP was performing a government function in defending the City against tort liability. The district court discussed the issue and made an erroneous finding that Diercks conceded *Gannon* did not apply, which we will discuss later.

The *Gannon* court determined, "The Foundation is performing a government function in both a theoretical and factual sense." *Id.* The court noted the "elaborate contractual arrangement between the government body and a private organization, through which the private organization and the government enjoy a highly interwoven and symbiotic relationship." *Id.* It also noted the "significant public interest in knowing from whom donations come and how that relates to where the university, as a public institution, chooses to spend its money." *Id.* (citation omitted). "The plain and unambiguous language of the statute states that a government body shall not prevent examination or copying of a public record *by contracting* with a nongovernment body." *Id.*

The City insists—and the district court apparently accepted—Diercks "conceded" the relationship between the City and ICAP did not have an "interwoven and symbiotic relationship" like that in *Gannon*. We find no such concession was made. In his brief in resistance to summary judgment, Diercks argued the City waived its right to confidentiality in its defense attorney's fee statements when those statements were provided to ICAP, a third party. Diercks stated, "The release of the information to ICAP was not as a result of an 'interwoven and symbiotic relationship.'" This is not a concession that ICAP was not performing a government duty or function.

We are persuaded Diercks accurately portrays the "defense of lawsuits filed against Bettendorf" as a government duty or function. Chapter 670 of the Iowa

Code outlines the tort liability of government subdivisions.[9] "Except as otherwise provided by this chapter, every municipality is subject to liability for its torts and those of its officers and employees, acting within the scope of their employment or duties, whether arising out of a government or proprietary function." Iowa Code § 670.2(1). "[M]unicipalities have a duty to defend and indemnify officers and employees against any tort claims arising out of their employment." *Miller*, 546 N.W.2d at 603 (citing Iowa Code § 670.8).

In light of potential liability in tort, section 670.7 authorizes municipalities to participate in a government risk pool:

> The governing body of a municipality may join and pay funds into a local government risk pool to protect the municipality against any or all liability, loss of property, or any other risk associated with the operation of the municipality. The governing body of a municipality may enter into insurance agreements obligating the municipality to make payments beyond its current budget year to provide or procure the policies of insurance, self-insurance program, or local government risk pool. The premium costs of the insurance, the costs of a self-insurance program, the costs of a local government risk pool, and the amounts payable under the insurance agreements may be paid out of the general fund or any available funds or may be levied in excess of any tax limitation imposed by statute.

ICAP is a risk pool as outlined in section 670.7, and the City has expended public funds to join it. If ICAP was not providing a legal defense for the City, the City would still be required to defend against its liability. The public has an interest

---

[9] In *Miller*, 546 N.W.2d at 600–01, our supreme court reviewed the law before enactment of chapter 670:

> Before enactment of statutes waiving governmental immunity, counties were not as a rule liable for torts committed by them in the exercise of a governmental function. The rule was otherwise if the tort was committed in the exercise of a county's proprietary or private function. County employees were still liable for their own torts even though such employees were engaged in a governmental function and even though the county was exempt under governmental immunity.

(Citations omitted.)

in knowing how public monies are being expended. Because we conclude ICAP is performing a government function by virtue of its contract with the City, as specifically applied to the facts of this case, its records are "public records" subject to examination. The district court granted summary judgment on the ground the records were not public records subject to disclosure. This ruling was in error, and we reverse and remand for further proceedings.

The City argues that its contract with ICAP states the some material is confidential as to the risk pool. The City also argues that if the records are public records, they are exempt from disclosure pursuant to statutory exemptions and rules of civil procedure. "Exceptions to the general rules of disclosure are to be narrowly construed." *Gannon*, 692 N.W.2d at 38. Moreover, "our courts have consistently held the burden of proving a public record is exempt from disclosure or production is on the governmental body claiming the exemption." *Diercks*, 894 N.W.2d at 23.

We conclude the billing records requested are subject to disclosure pursuant to Iowa Code section 22.2(2). We do not rule on the City's claims of privilege and exemption but leave such questions to the district court on remand and further development of the record.

**REVERSED AND REMANDED.**