# IN THE COURT OF APPEALS OF IOWA

No. 15-0999
Filed August 17, 2016


**SYSCO IOWA, INC.,**
        Plaintiff-Appellant,

**vs.**

**UNIVERSITY OF IOWA,**
        Defendant-Appellee.
_____


Appeal from the Iowa District Court for Johnson County, Chad A. Kepros, Judge.


A food distribution company appeals the district court's determination its contract with the University of Iowa does not contain trade secrets and is therefore subject to disclosure under Iowa's Open Records Act. **REVERSED AND REMANDED.**



James R. Swanger, Michael R. Reck, Kelsey J. Knowles, and Emily M. Schirmer of Belin McCormick, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and George A. Carroll, Assistant Attorney General, for appellee.


Considered by Vogel, P.J., Potterfield, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**POTTERFIELD, Judge.**

Sysco Iowa, Inc. appeals the district court's determination that the Master Distribution Agreement (contract) Sysco entered into with the University of Iowa Hospitals and Clinics (the University) does not contain trade secrets and is therefore subject to disclosure under Iowa's Open Records Act. Sysco argues the contract does contain trade secrets and those trade secrets should be protected from disclosure. *See* Iowa Code § 22.7(3) (2015). Alternatively, Sysco argues examination of the contract is not in the public interest and would cause substantial and irreparable injury to the company. *See id.* § 22.8. We find the relevant portions of the contract—information detailing, among other things, Sysco's pricing, financing, discount, and delivery terms—have independent economic value and qualify as trade secrets. Therefore, those portions of the contract are confidential records that are exempt from disclosure under the Open Records Act. The district court erred in denying Sysco injunctive relief.

## I. Background Facts and Proceedings

The original contract between Sysco and the University is dated September 1, 2008, and provided for Sysco to supply the University with food distribution services for the time period beginning September 1, 2008, and ending August 30, 2013. Subsequent amendments extended the term of the contract twice, first to August 30, 2014, and then to June 30, 2015. The contract was the result of a competitive process whereby companies provided sealed bids to the University to provide the services needed by the University and included a confidentiality provision. The full contract, including ten attached schedules and three amendments, is thirty-four pages long.

A reporter from the Cedar Rapids Gazette filed a request with the University, pursuant to Iowa's Open Records Act, seeking information regarding the contract. *See id.* § 22.2. The University believed the contract to be a public record it was obligated to disclose and notified Sysco of its intent to do so unless Sysco obtained injunctive relief. Sysco filed a petition seeking an injunction on September 19, 2014, asserting the contract included trade secrets not subject to disclosure and that disclosure would serve no public purpose but would cause substantial and irreparable injury to Sysco and give its competitors an advantage. *See id.* §§ 22.7(3), 22.8(1).

The district court held a hearing on Sysco's petition on April 13, 2015. The reporter from the Cedar Rapids Gazette attended but did not intervene. The University was represented but offered no evidence and took no position on the issue of whether portions of the contract constituted trade secrets. Two days later, on April 15, 2015, the district court issued an order denying Sysco's petition for injunctive relief. The order, later clarified following Sysco's motion to enlarge or amend under Iowa Rule of Civil Procedure 1.904, found the contract did not qualify for a trade secret exemption under Iowa Code section 22.7(3) and Sysco failed to establish the elements required to justify an injunction under section 22.8. The district court ordered the University to produce the contract for examination unless Sysco appealed the order and sought a stay, in which case the University was to delay examination of the contract pending resolution of Sysco's request for a stay.

Sysco filed both a notice of appeal and a motion for stay on June 9, 2015. The Iowa Supreme Court granted the motion for stay on July 20, 2015, ordering disclosure of the contract be stayed pending resolution of this appeal.

## II. Standard of Review

Because cases brought under chapter 22 of the Iowa Code are ordinarily triable in equity, we review the district court's ruling on Sysco's application for injunctive relief de novo. *See Iowa Film Prod. Servs. v. Iowa Dep't of Econ. Dev.*, 818 N.W.2d 207, 217 (Iowa 2012). "We review the district court's interpretation of chapter 22 for correction of errors at law." *Id.*

## III. Discussion

Iowa's Open Records Act, codified in chapter 22 of the Iowa Code, grants citizens the right to examine and copy records maintained by the State and other local governmental bodies supported by citizens' property tax revenue. *See* Iowa Code §§ 22.1(1), (3)(a), 22.2(1) ("Every person shall have the right to examine and copy a public record and to publish or otherwise disseminate a public record or the information contained in a public record."). The purpose of chapter 22 is "to open the doors of government to public scrutiny—to prevent government from secreting its decision-making activities from the public, on whose behalf it is its duty to act." *Iowa Civil Rights Comm'n v. City of Des Moines*, 313 N.W.2d 491, 495 (Iowa 1981). "Accordingly, there is a presumption of openness and disclosure under this chapter." *Gabrilson v. Flynn*, 554 N.W.2d 267, 271 (Iowa 1996).

Notwithstanding the presumption of openness, disclosure of public records under chapter 22 has explicit limits; the Open Records Act enumerates sixty-

seven categories of "confidential" records and exempts them from disclosure "unless otherwise ordered by a court, by the lawful custodian of the records, or by another person duly authorized to release such information." Iowa Code § 22.7. One such category covers "[t]rade secrets which are recognized and protected as such by law." *Id.* § 22.7(3). In applying section 22.7(3), we use the definition for "trade secrets" found in Iowa's Uniform Trade Secrets Act. *Iowa Film Prod. Servs.*, 818 N.W.2d at 219. The Uniform Trade Secrets Act defines a "trade secret" as follows:

> 4. *"Trade secret"* means information, including but not limited to a formula, pattern, compilation, program, device, method, technique, or process that is both of the following:
> a. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by a person able to obtain economic value from its disclosure or use.
> b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Iowa Code § 550.2(4).

The definition of a trade secret under section 550.2(4) presents "a mixed question of law and fact." *Econ. Roofing & Insulating Co. v. Zumaris*, 538 N.W.2d 641, 648 (Iowa 1995). The first portion of the definition is the legal question, while the elements described in subsections (a) and (b) are questions of fact. *Id.* at 648–49.

Public records may also be protected from disclosure in other, narrowly-drawn circumstances set forth in chapter 22:

> 1. The district court may grant an injunction restraining the examination, including copying, of a specific public record or a narrowly drawn class of public records. A hearing shall be held on a request for injunction upon reasonable notice as determined by the court to persons requesting access to the record which is the

subject of the request for injunction. It shall be the duty of the lawful custodian and any other person seeking an injunction to ensure compliance with the notice requirement. Such an injunction may be issued only if the petition supported by affidavit shows and if the court finds both of the following:

    a. That the examination would clearly not be in the public interest.

    b. That the examination would substantially and irreparably injure any person or persons.

    . . . .

    3. In actions brought under this section the district court shall take into account the policy of this chapter that free and open examination of public records is generally in the public interest even though such examination may cause inconvenience or embarrassment to public officials or others. A court may issue an injunction restraining examination of a public record or a narrowly drawn class of such records, only if the person seeking the injunction demonstrates by clear and convincing evidence that this section authorizes its issuance.

Iowa Code § 22.8(1), (3).

Here, the district court determined none of the relevant information in the contract qualified for exemption from disclosure as a trade secret because Sysco did not prove the information had independent economic value:

> The [contract] in this case includes information on (1) how Sysco defines its "cost"; (2) how Sysco calculates "costs"; (3) the University's right to audit its account; (4) a margin schedule for categories of products sold to the University; (5) details of the marketing programs available to the University of Iowa; and (6) agreements to provide special services to the University. It is clear to the court that the portions of the [contract] Sysco seeks to protect from disclosure qualifies as "information" under Iowa Code section 550.2(4).
>
> Having determined that the information in the [contract] which Sysco seeks to protect is "information" under Iowa Code section 550.2(4), the court must determine, as a factual matter, whether such information derives independent economic value and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. . . . By affidavit, Sysco states that, if the terms of its contract with the University of Iowa were made public, it would be significantly disadvantaged during the next bidding process because other competitors would know their cost, how they define cost, the margins charged to the

University of Iowa, and the special discounts that were provided. Sysco further claims that it would be at a disadvantage because it would not know similar information regarding its competitors. . . . Sysco claims that comparing contracts during the bidding process is difficult and that a competitor having Sysco's contract could possibly undercut certain provisions while using other terms or provisions to charge a higher price or provide different services.

. . . .

The court finds that the information in the [contract] sought by Sysco to be protected from disclosure in this case does not qualify for a trade secret exemption under Iowa Code section 22.7(3) because Sysco fails to prove the independent economic value element required by Iowa Code section 550.2(4)(a). The affidavit offered by Sysco makes a general claim that it would be disadvantaged during the next bidding process if Sysco's competitors knew its cost, margins, and special discounts. However, Sysco does not provide any specifics on the food distribution industry, Sysco's place in the industry, the other competitors in the industry, or how the release of the information contained in the [contract] would specifically advantage competitors or disadvantage Sysco beyond the bare assertion it would do so. . . .

. . . .

While the court understands that Sysco would prefer to keeps its contracts confidential, Sysco fails to provide facts at a level necessary to establish the trade secret exemption to overcome the strong presumption of disclosure. . . .

The court does find that Sysco has satisfied the second prong of the trade secret test in Iowa Code section 550.2(4)(b)— that the information is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. . . .

. . . .

Because the court finds that Sysco has not met its burden to establish the trade secrets exemption under Iowa Code section 22.7(3), the court denies the petition for injunctive relief.

Following Sysco's motion to enlarge or amend, the district court clarified its finding Sysco also failed to prove it was entitled to injunctive relief through alternative means under section 22.8, explaining Sysco "did not establish both that the examination [of the contract] clearly would not be in the public interest and that the examination would substantially and irreparably injur[e] any person or persons."

On appeal, Sysco challenges the district court's conclusion regarding the first of the two fact questions under section 550.2(4)—that the relevant portions of the contract do not have independent economic value and, therefore, do not constitute trade secrets exempt from disclosure under the Open Records Act. Sysco does not dispute the district court's findings on either the legal question— the initial determination the portions of the contract Sysco seeks to protect qualify as "information" within the meaning of section 550.2(4)—or the second of the two factual questions—that Sysco took reasonable efforts to maintain the secrecy of the contract. As was the case below, the University takes no position on whether the contract contains trade secrets and only asks on appeal that we "rule appropriately."

The district court relied primarily upon two Iowa Supreme Court cases in reaching its conclusion the portions of the contract did not have independent economic value: *US West Communications, Inc. v. Office of Consumer Advocate*, 498 N.W.2d 711, 714–15 (Iowa 1993), and *Iowa Film Production Services*, 818 N.W.2d at 219–25. Specifically, the district court tracked the weaknesses our supreme court found in the proof offered by the company seeking injunctive relief in *US West* and found the same weaknesses applicable to Sysco's proof. We find both cases factually distinguishable.

In *US West*, a series of investigative articles suggested a company and its subsidiaries were engaged in a pattern of sales and leasebacks of commercial real estate properties. 498 N.W.2d at 713. According to the articles, the scheme involved the company and its subsidiaries paying each other inflated lease rates to help drive up the costs of the buildings for sale and avoid losses to

shareholders; the trumped-up lease payments were then passed along to customers by increasing utility costs. *Id.* The Iowa Supreme Court considered whether information related to the leases, sales, and purchases should be classified as trade secrets but ultimately concluded it did not have independent economic value, given the unique circumstances. *Id.* at 715. In an attempt to prevent disclosure of the information, US West claimed if sales and lease data were disclosed, competitor lessors would undercut its pricing and gain an unfair bargaining advantage. *Id.* at 714. However, the affidavits and testimony provided did not adequately explain why that was so. *Id.* at 715. Our supreme court found the record insufficient to determine whether the company and its subsidiaries were major players in the competitive real estate leasing market or if most of the leases were between affiliates, noting, "If in fact the sales and leases are in-house transactions between parent and subsidiary companies rather than arm's-length transactions, we believe the information would be of little use to West's competitors." *Id.*

In *Iowa Film*, "certain irregularities" aroused public interest in an Iowa tax credit program designed to encourage filmmakers to bring projects into the state. 818 N.W.2d at 213. The Iowa Supreme Court considered whether budget expenditure summaries submitted by film production companies qualified for protection from disclosure as trade secrets but concluded they did not have independent economic value. *Id.* at 219–25. The production companies argued they would not be able to sell their films for a profit if distributors knew the true cost of making the film and that disclosure of the summaries could potentially enable the public to deduce the compensation paid to directors and actors whose

employment had been conditioned upon the confidentiality of their compensation arrangements. *Id.* at 223. Our supreme court found these arguments "more theoretical than real." *Id.* at 223–24. As to the first argument, the court reasoned the ability to sell a film was driven not by cost but by bidding within a highly competitive distribution market based upon predictions of box-office success, the stated cost would not reflect the true cost due to the tax credits involved, and most importantly, it was already possible to determine the overall production cost of the films by doubling the amount of the publicly-available fifty percent tax credits awarded. *Id.* at 223. As to the second argument, the court could not find a discernable way to determine confidential compensation amounts from the budget expenditure summaries in the record. *Id.* at 224.

The district court found *US West* and *Iowa Film* to be directly analogous and controlling:

> While the court understands that Sysco would prefer to keeps its contracts confidential, Sysco fails to provide facts at a level necessary to establish the trade secret exemption to overcome the strong presumption of disclosure. As was the case in *US West*, the affidavit provided by Sysco merely provides opinions concerning the effects disclosure would have, but such evidence is self-serving and does not contain hard facts. The court's conclusion is likewise consistent with *Iowa Film* . . . in which the [Iowa Supreme] Court concluded that the evidence of independent economic value was more theoretical than real.

However, unlike in *US West* and *Iowa Film*, Sysco's claim that disclosure of the entire contract will provide an advantage to Sysco's competitors is a legitimate concern—not a theoretical one—and we therefore hold the relevant portions of the contract have independent economic value within the meaning of the Uniform Trade Secrets Act. The relevant portions of the contract would, if disclosed,

effectively provide competitors with a blueprint of Sysco's operating model not otherwise available to them. Among other things, competitors would know precisely how Sysco defines cost for pricing purposes, precisely what margins it is both willing and able to operate on, and what special discounts it provides. Sysco derives independent economic value in keeping that knowledge away from its competitors, who would be able to use the information to gain an unfair advantage in bids for future contracts.

Moreover, Sysco's argument that disclosure of the entire contract would provide its competitors with a clear advantage is not susceptible to concerns of affiliates bargaining at less than arm's length. The sealed-bid competition between Sysco and its competitors provides the context for Sysco's claims. In *US West*, where our supreme court suspected a telecommunications corporation and its subsidiaries wanted to prevent disclosure of copies of lease and real estate transactions between and among themselves, the court found the record insufficient to establish disclosure would, in fact, cause any competitive disadvantage. 498 N.W.2d at 714–15. Our supreme court explained:

> [US] West contends the data involved has economic value. It urges that if sale and lease data were disclosed, competitor lessors would undercut its pricing; their lessees would gain an unfair bargaining advantage; and when [US] West was a potential lessee, it would be disadvantaged if lessors knew what it paid elsewhere.
> The record made before the trial court is not as clear as these contentions. . . . While affidavits and testimony by [US] West and its subsidiary employees provide opinions concerning the deleterious effects disclosure will have on [US] West or its affiliates, such evidence is self-serving and does not contain hard facts.
> [US] West provided no evidence concerning the number of tenants in the buildings, the percentage of buildings rented to outsiders, the occupancy rates, or [US] West's own needs concerning leasing space. While reference is made to competitors,

> the record is vague concerning the extent of the advantage the lease information will provide competitors. We are uncertain whether [US] West or its subsidiaries are major players in the competitive real-estate leasing market or whether most of its leasing is between affiliates. . . . If in fact the sales and leases are in-house transactions between parent and subsidiary companies rather than arm's-length transactions, we believe the information would be of little use to [US] West's competitors. The burden was on [US] West and its subsidiaries to prove that a disclosure of the lease and sales information would put [US] West at an economic disadvantage. In our de novo review, we conclude [US] West has failed to meet this burden.

*Id.* In short, the *US West* court was unable to determine whether information about the lease and real estate sales had independent economic value because no concrete information was provided to establish the context in which the information might be used by competitors; it was very possible the information would have had no such value because it concerned leases and real estate transactions between a parent corporation and its subsidiaries—transactions that would not be vulnerable to competitors seeking to undercut prices.

Here, in contrast, the potential harm to Sysco is straightforward. If the entire contract is disclosed, information asymmetry will result. Sysco will stand a very real risk of being undercut on future bids because Sysco's competitors know its bid strategy, but Sysco does not know theirs. Given the self-evident nature of the advantage Sysco's competitors would gain by having access to the information, we find the affidavits supplied by Sysco in support of its motion for injunctive relief provided sufficient proof for the relief requested. Although no Iowa case appears to be directly on point, a number of other jurisdictions have found this type of information has independent economic value and qualifies as a trade secret. *See, e.g.*, *McDonnell Douglas Corp. v. NASA*, 180 F.3d 303, 306–

07 (D.C. Cir. 1999) (dismissing the argument that disclosure of line-item pricing would not enable competitors to underbid company in future because price is only one of the many factors used in awarding contracts, as "too silly to do other than to state it, and pass on"); *Cardinal Freight Carriers, Inc. v. J.B. Hunt Transp. Servs., Inc.*, 987 S.W.2d 642, 645–46 (Ark. 1999) ("[The company]'s chief executive officer . . . here similarly testified how [the company]'s trade secrets derived economic value by keeping confidential information bearing on price modeling, customer profit margins, logistics, future plans, and specific market strategies. Obviously, armed with such information, a competitor would have an edge in capturing some significant part of [the company]'s customers and business. In sum, we harbor no doubts [the company]'s confidential agreements . . . cover secrets of the type that are protected by Arkansas's Trade Secrets Act."); *Whyte v. Schlage Lock Co.*, 125 Cal. Rptr. 2d 277, 287 (Cal. Ct. App. 2002) (finding information identifying a company's pricing, profit margins, costs of production, pricing concessions, promotional discounts, advertising allowances, volume rebates, marketing concessions, payment terms and rebate incentives "has independent economic value because [the company]'s pricing policies would be valuable to a competitor to set prices which meet or undercut [the company]'s").

We find the contract between Sysco and the University contains trade secrets as defined in Iowa Code section 550.2(4). Those trade secrets are exempt from disclosure under Iowa's Open Records Act because they qualify as "confidential information" under section 22.7(3). The district court's findings to the contrary were in error. We therefore reverse the district court's order and

remand for further proceedings consistent with this opinion. Because we have resolved this appeal on Sysco's first argument, we need not address its second.

**REVERSED AND REMANDED.**