# IN THE COURT OF APPEALS OF IOWA

No. 15-0609
Filed December 21, 2016

DR. ALLEN DIERCKS and PATRICIA LANE,
  Plaintiffs-Appellants,

vs.

CRAIG MALIN, Davenport City Administrator,
CITY OF DAVENPORT, IOWA, an Iowa Municipal
Corporation, and JACKIE E. HOLECEK,
Davenport City Deputy Clerk,
  Defendants-Appellees.

_____

  Appeal from the Iowa District Court for Scott County, Stuart P. Werling, Judge.

  The plaintiffs appeal the district court's denial of their claim based on the defendants' alleged failure to provide documents pursuant to the Iowa Open Records Act. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

  Michael J. Meloy of Meloy Law Office, Bettendorf, and John T. Flynn of Brubaker, Flynn & Darland, Davenport, for appellants.

  Jason J. O'Rourke of Lane & Waterman, L.L.P., Davenport, for appellees.

  Heard by Vogel, P.J., and Tabor and Mullins, JJ.

**MULLINS, Judge.**

Allen Diercks and Patricia Lane (the plaintiffs) appeal the district court's denial of their claim based on the alleged failure of Davenport City Administrator Craig Malin, the City of Davenport, and Davenport City Deputy Clerk Jackie Holecek (collectively, the City) to provide documents pursuant to Iowa Code chapter 22 (2013) (the Iowa Open Records Act). For the reasons set forth below, we affirm in part, reverse in part, and remand.

## I.     Background Facts and Proceedings

This case arises from the City of Davenport's inquiry into acquiring the Isle of Capri's Rhythm City Casino. On October 15, 2012, Davenport's Mayor, William Gluba, executed an agreement with the casino, which enabled the City to examine the casino's financial and operational information as part of the City's consideration of potentially acquiring the casino. The casino agreement was designated private and confidential by the parties, although the agreement indicated disclosure of the agreement and the materials exchanged pursuant to the agreement may be required under the Iowa Open Records Act.

Also in October 2012, the Davenport City Council approved a motion directing Gluba to sign a proposed asset purchase term sheet with the casino, "to begin [the] formal process which may lead to [the] City['s] purchase of [the] casino." The term sheet provided the casino would afford the City "reasonable access to records and information" so the City could "conduct a customary purchaser's due diligence investigation."

In December 2012, Malin signed a contract with Deloitte & Touche LLP, in which the parties agreed Deloitte would perform a due diligence evaluation of the

casino. The Deloitte contract restricted the City's ability to disclose information it received from Deloitte, while noting those limitations did not apply where disclosure was required by a subpoena, court order, regulatory authority, or other legal process.

The City hired attorney John Hintze as a legal consultant and Gary Buettner as a casino-operations expert. Hintze served as the primary contact for Deloitte during its due diligence review. On January 9, 2013, Hintze sent an email to Davenport City Attorney Thomas Warner, Buettner, and a Deloitte partner, Ayesha Rafique, with an attached legal memorandum explaining certain due diligence information might be subject to a public records request.

On January 21, Rafique executed on behalf of Deloitte a document entitled "Scope of Services," which was marked "Appendix B" to the Deloitte contract and outlined the services Deloitte would provide the City. This document was sent to Hintze, Buettner, and Malin.

On February 18, Rafique sent Warner a bill in the amount of $207,900;[1] Rafique also had sent the bill to Hintze just four days prior. Warner testified he informed Rafique the City would only pay a final bill at the end of the transaction. The bill was subsequently cancelled, and Warner deleted the e-mail containing the February bill.[2]

---

[1] The plaintiffs dispute the district court's classification of this bill as a "progress" bill that did not need to be paid until the work was completed. The classification of this bill is irrelevant for our purposes.

[2] The record reflects Warner also received a copy of the bill on February 19 from Hintze, who asked Warner how the bill should be handled. A number of e-mails were then exchanged among Warner, Hintze, and Rafique, discussing the possibility of the bill being paid through Hintze's law firm.

In late February or early March, the City ceased its pursuit of potentially purchasing the casino. As a result, Deloitte was instructed to stop working on its due diligence review.[3]

On March 12, Deloitte sent an invoice for $387,500 to the City for services performed through March 8. The invoice was not itemized; Warner indicated this was required to protect the confidential nature of the services performed by Deloitte and information provided by the casino. Warner stated, "our outside attorney [(Hintze)] and Gary [Buettner] monitored [Deloitte's] work for us [(the City)]."

On April 10, Warner provided Gluba and the city council a memorandum marked confidential, which stated an alderman "would like to see a product or report resulting from the due diligence work undertaken by Deloitte." Warner wrote, "The request cannot be readily accommodated due to the nature of the due diligence work and the confidentiality agreements executed by the City between Deloitte and the [casino]." The memorandum further stated, "Deloitte provided financial preacquisition due diligence and advice and recommendations . . . . [which] w[ere] coordinated with the legal work of [Hintze's law firm], and the operational review and recommendations of [Buettner]." Warner concludes "[a]s the Asset Purchase Agreement negotiations were iterative, there is no single concluding product or report to produce."

On April 11, the plaintiffs served a public records request on the City,[4] pursuant to Iowa Code chapter 22, summarized as follows:

---

[3] The City contends it would have cost another $50,000 to have Deloitte complete its due diligence work and draft a report.

- The engagement letter with Deloitte and attachments,

- All e-mails (and attachments), memorandums, letters, or correspondence *between Malin and Deloitte* regarding the due diligence services,

- All e-mails (and attachments), memorandums, letters, or correspondence *between Davenport finance director, Brandon Wright, and Deloitte* regarding the due diligence services,

- All e-mails (and attachments), memorandums, letters, or correspondence *between Warner and Deloitte* regarding the due diligence services.

In response, the City produced documents on April 22.[5]  It is undisputed this production did not include a copy of the Deloitte Scope of Services document, despite the plaintiffs' request.  When responding to the request, the City made no claim of confidentiality, privilege, or exemption.

The plaintiffs served an additional public records request on April 24 summarized as:

- All invoices and itemized statements detailing the hours spent and the services provided by Deloitte,

- All e-mails *between* Malin and Deloitte,

---

[4] The plaintiffs served three other public records requests upon the City prior to this request, but only the three document requests discussed herein are at issue in this matter.

[5] The City contends it followed its standard operating procedures in responding to all of the plaintiffs' requests: logging them as received, assigning them to staff in the appropriate departments, working with the IT department to search for responsive documents, and having any potential responsive documents reviewed by Warner for items that could not be disclosed.

- Copies of all reports, letters, analysis, or other information *received from* Deloitte on the casino deal.

The City responded with documents on May 3 and again made no claim of confidentiality, privilege, or exemption for undisclosed materials. It is undisputed, however, that the City did not produce the invoice received from Deloitte in February or the January 9 Hintze legal memorandum.

On May 21, Malin signed a "Due Diligence Reimbursement Agreement" with Rodney A. Blackwell, as the manager of Davenport Casino Group, L.L.C. (DCG), based on DCG's intention to purchase and develop a casino in Davenport. The reimbursement agreement provided the City would "cooperate in the assignment of any work previously performed by Deloitte on behalf of the City to DCG" and, in return, DCG would "reimburse the City for the full cost of the due diligence services of Deloitte previously provided to the City" in the event DCG could obtain the necessary approval and financing to move ahead with its casino development plans.[6]

On May 23, the plaintiffs made another public records request, summarized as:

- Any and all reports, memorandums, letters, data analyses, and all other papers *received from* Deloitte pertaining to due diligence work done by Deloitte,

- Copies of any and all of the due diligence reports, memorandums, data analyses, and all other paperwork *from* Deloitte regarding the casino.

---

[6] Ultimately, no assignment occurred, and the City of Davenport paid Deloitte's fee.

The City responded on June 5, again making no claim of confidentiality, privilege, or exemption.[7] It is undisputed the City did not produce any Deloitte due diligence work product in response to this request.

On June 7, the plaintiffs' attorney e-mailed Warner, noting the Deloitte due diligence work product had not been produced and requesting "all of the De[l]oitte due diligence information as stated in the May 23, 2013 public records reque[s]t, including reports, memorandums, data analyses, letters and all other papers." Warner responded, "The short answer is no report exists; they never finished the[ir] work."

The plaintiffs brought this lawsuit on June 20, 2013, seeking, in relevant part, injunctive relief.[8] On July 9, the City filed its answer and asserted no affirmative defenses. On September 19, Warner mailed an unsigned copy of the Deloitte Scope of Services to the plaintiffs' attorney, with an attached letter containing the subject line "Missing Attachment." The letter indicated the City had initially produced an e-mail thread that had no attachments, but it had since discovered earlier e-mail threads had contained the attachment, and it had located and was now producing said attachment.

On January 24, 2014, the plaintiffs issued a subpoena to Deloitte for all Deloitte due diligence work product. Deloitte, the casino, and the City moved to

---

[7] The plaintiffs contend a total of 319 pages of record were produced. The City contends nearly 900 documents were produced, although it appears the City is including the documents it produced in response to the three record requests that are not at issue in this case.

[8] Specifically, the plaintiffs requested the district court "issue an injunction prohibiting [the City] from continuing to violate Chapter 22."

quash the subpoena; the district court denied those motions and granted the plaintiffs' motion to compel on April 8. Deloitte then produced the documents.

In February 2015, a bench trial was held. That same month, the district court ruled in favor of the City.[9] On March 6, the plaintiffs filed a motion to enlarge or amend, which the district court summarily denied. The plaintiffs appeal.

## II.    Standard and Scope of Review

"Cases commenced under Iowa Code chapter 22 are ordinarily triable in equity, thus calling for de novo review on appeal." *Iowa Film Prod. Servs. v. Iowa Dep't of Econ. Dev.*, 818 N.W.2d 207, 217 (Iowa 2012) (quoting *Clymer v. City of Cedar Rapids*, 601 N.W.2d 42, 45 (Iowa 1999)) (reviewing an "action seeking injunctive relief and attorneys' fees under chapter 22 of the Iowa Code"). "We review the district court's interpretation of chapter 22 for correction of errors at law." *Id.*; *Press-Citizen Co. v. Univ. of Iowa*, 817 N.W.2d 480, 484 (Iowa 2012). When applying a de novo review, "the district court's findings of facts are not binding, but we will 'give deference to those findings because the district court had the opportunity to assess the credibility of the witnesses.'" *Horsfield*

---

[9] The plaintiffs take issue with certain factual findings made by the district court; however, a number of those factual findings are not relevant to the matters now in dispute, and therefore, we do not address them. The plaintiffs also challenge the district court's consideration of a demonstrative exhibit in its order, when the demonstrative exhibit was not entered into evidence. We note that matters not in evidence cannot be considered by the district court. *See generally State v. Minneapolis & St. L. Ry. Co.*, 56 N.W. 400, 403 (Iowa 1893) (noting items not in evidence cannot be considered). Similarly, the plaintiffs allege the district court confused the documents produced in this litigation with those produced in response to the public record requests when it found "[a] substantial volume of record w[as] produced for the plaintiffs in response to these records requests." Regardless of the veracity of this statement, we do not rely upon it or the demonstrative exhibit for our analysis on appeal.

*Materials, Inc. v. City of Dyersville*, 834 N.W.2d 444, 452 (Iowa 2013) (quoting *Hensler v. City of Davenport*, 790 N.W.2d 569, 578 (Iowa 2010)).

### III.     Analysis

Iowa Code section 22.2(1) states, in relevant part, "Every person shall have the right to examine and copy a public record."  "The purpose of the statute is 'to open the doors of government to public scrutiny [and] to prevent government from secreting its decision-making activities from the public, on whose behalf it is its duty to act.'"  *Iowa Film Prod. Servs.*, 818 N.W.2d at 218 (alteration in original) (quoting *City of Riverdale v. Diercks*, 806 N.W.2d 643, 652 (Iowa 2011)).  "[T]he Act establishes 'a presumption of openness and disclosure.'"  *Id.* (quoting *Gabrilson v. Flynn*, 554 N.W.2d 267, 271 (Iowa 1996)); *see also Gannon v. Bd. of Regents*, 692 N.W.2d 31, 38 (Iowa 2005) ("The right of persons to view public records is to be interpreted liberally to provide broad public access to public records." (citation omitted)).  "Disclosure is the rule, and one seeking the protection of one of the statute's exemptions bears the burden of demonstrating the exemption's applicability."  *Diercks*, 806 N.W.2d at 652 (quoting *Clymer*, 601 N.W.2d at 45).

Iowa Code section 22.10 "authorizes civil suits by citizens to enforce the statute."  *Id.*  In such an action, the initial burden rests with the claimant to demonstrate "that the defendant is subject to the requirements of [chapter 22], that the records in question are government records, and that the defendant refused to make those government records available for examination and copying by the plaintiff."  Iowa Code § 22.10(2); *see also Horsfield*, 834 N.W.2d at 460.  The claimant must make this showing by a preponderance of the

evidence.  *See Horsfield*, 834 N.W.2d at 460; *see also Wings v. Dunlap*, 527 N.W.2d 407, 410 (Iowa Ct. App. 1994).  "Once the citizen shows the city denied his or her request to access government records, the burden shifts to the city to demonstrate it complied with the chapter's requirements."  *Diercks*, 806 N.W.2d at 653 (citing Iowa Code § 22.10(2)).

We have previously employed a "substantial compliance" test when considering if a governmental body complied with chapter 22's requirements. *See Wings*, 527 N.W.2d at 410.  In *Horsfield Materials*, 834 N.W.2d at 462, the Iowa Supreme Court "utilize[d]" this test "without deciding that it [was] the appropriate test."  The Iowa Supreme Court has previously summarized the "substantial compliance" test as follows:

> "[S]ubstantial compliance" with a statute means actual compliance in respect to the substance essential to every reasonable objective of the statute.  It means that a court should determine whether the statute has been followed sufficiently so as to carry out the intent for which it was adopted.  Substantial compliance with a statute is not shown unless it is made to appear that the purpose of the statute is shown to have been served.  What constitutes substantial compliance with a statute is a matter depending on the facts of each particular case.

*Brown v. John Deere Waterloo Tractor Works*, 423 N.W.2d 193, 194 (Iowa 1988); *see also Horsfield*, 834 N.W.2d at 462 (parenthetically citing *Brown* for the proposition that "substantial compliance is a fact-specific inquiry depending on whether 'the purpose of the statute is shown to have been served'").

It is undisputed the City is subject to the requirements of chapter 22.  *See* Iowa Code § 22.1(1) (defining a "governmental body" to include a "city").  The parties dispute, however, what records were actually requested, whether the requested records at issue are public records, and whether the City "refused" to

make them available to the plaintiffs. Specifically, the parties dispute the appropriate classification of—and the City's obligation to produce—four items: (1) the Deloitte due diligence work product, (2) the invoice the City received from Deloitte in February, (3) the Deloitte Scope of Services document, and (4) the January 9 Hintze legal memorandum. We discuss each disputed item in turn.

## A.    The Deloitte Due Diligence Work Product

On appeal, the parties dispute the following issues regarding the Deloitte due diligence work product: (1) whether the documents were actually requested by the plaintiffs, (2) whether the City delegated a duty to Deloitte, (3) whether the documents are public records, and (4) whether the City refused to produce them.

Both before the district court and on appeal, the City argues this "work product" was not specifically sought in the public records request. The relevant public records request sought:

> 1.    Any and all reports, memorandums, letters, data analyses and all other papers *received from* [Deloitte] pertaining to due diligence work done by [Deloitte] for Craig Malin and/or the City of Davenport from December 12, 2012 through May 23, 2013.
>      . . . .
> 3.    Copies of any and all due diligence reports, memorandums, data analyses and all other paperwork *from* [Deloitte] regarding [the casino] that the City is proposing to sell to Rodney Blackwell for $387,500.00.

(Emphasis added.)[10]   The City contends, as the work product had not been transferred to the City and therefore had not been "received from" Deloitte, it did not fail or refuse to produce documents that were not requested.

---

[10] Similarly, in the April 24 records request, the plaintiffs sought "[c]opies of all reports, letters, analysis, or other information *received from* [Deloitte] on the acquisition, purchase or lease of the [casino]." (Emphasis added.)

The records request framed by the plaintiffs did not request documents prepared by and retained by Deloitte that had not been delivered in any manner to the City. When the plaintiffs did not receive the documents they sought, the plaintiffs' attorney sent an e-mail on June 7 stating, "The response the City provided to our May 23, 2013 public records request does not contain the due diligence work the City paid $387,500 to [Deloitte] pursuant to the December 12, 2012 alleged contract Mr. Malin signed with Ayesha Rafique of Deloitte." The e-mail ended with the plaintiffs' request for "all of the De[l]oitte due diligence information as stated in the May 23, 2012 public records reque[s]t." We do not interpret the e-mail as requesting information not previously requested but merely urging compliance with the earlier request. The e-mail did not expand on the plain language of the requests for information received from Deloitte. Thus, we find the plaintiffs' public records request did not request Deloitte's work product document or any other documents in Deloitte's possession that had not been provided to the City—that is, records that had not been "received from" or paperwork "from" Deloitte. The plaintiffs' complaint of nondisclosure is with regard to a due diligence report or due diligence work product, which had not in fact been provided in any way to the City. Warner's April 10 memorandum to Gluba and the city council, which explained there was no report to provide in response to an alderman's request, supports the City's assertion there was no report available to it for production in response to the records request. The plaintiffs' request for public records was not a request for documents in the sole possession of Deloitte. Therefore, we need not address the question of whether

the City delegated a duty to Deloitte or whether any due diligence work product in the sole possession of Deloitte were public records.

**B.      The February Invoice**

In their April 24 public records request, the plaintiffs sought, in relevant part, "[a]ll invoices and itemized statements detailing the hours spent and the services provided by [Deloitte]."  It is undisputed by the parties this document constituted a government record.  The City contends it did not "refuse" to produce this document because Warner had deleted the document when Deloitte agreed to cancel the invoice and Warner had no obligation to keep the invoice after it had been cancelled.  The City further argues it substantially complied with the request by producing the final March bill.  Finally, the City argues the February invoice was a lump-sum bill that provided no insight into the City's decision-making activities, which is the purpose of chapter 22.

The plaintiffs dispute when Warner deleted the e-mail—although the date they proffer also predates their public records request—and argue Warner could have recovered the e-mail with the help of the IT department.  Neither party provides case law on this matter, and we have found no Iowa case law controlling on this issue.  However, we find persuasive the Supreme Court's discussion of the Federal Freedom of Information Act (FOIA) in *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136 (1980).  *See Diercks*, 806 N.W.2d at 658 (considering the Eighth Circuit Court of Appeals' discussion of a FOIA claim when analyzing chapter 22).  In *Kissinger*, the plaintiffs sought documents that were no longer in the possession of the agency to which the request had been made.  445 U.S. at 140.  The Supreme Court concluded FOIA

"does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained." *Id.* at 152; *see also Whitaker v. CIA*, 31 F. Supp. 3d 23, 46 (D.D.C. 2014). The plaintiffs do not argue chapter 22 imposes an obligation on the City to keep or create documents—nor do they cite provisions of the code that would support such an interpretation—only that the City should also look through those documents it has discarded electronically. We do not find the plaintiffs' contention persuasive. *See CareToLive v. FDA*, 631 F.3d 336, 344 (6th Cir. 2011) (finding governmental entity was not required "to recover electronic data that has been deleted in order to meet its requirement of performing a reasonable search" under FOIA).

It is clear, however, Hintze and Warner each had an e-mail containing the invoice, and there is no dispute the invoice is a public record. Regardless of the status of the copy that had been received by Warner, the invoice received by Hintze was likewise a public record. Our record shows no indication Hintze was not in possession of the invoice at all times material to this proceeding. *See* Iowa Code § 22.10(2) (placing the burden on the governmental entity to show compliance with the statute after the party seeking enforcement shows the governmental entity is subject to chapter 22, the records at issue are government records, and the defendant refused to produce the documents). Further, we know Deloitte still possessed the invoice, because it produced the same in the litigation. Even if the City was no longer in physical possession of the invoice because the invoice was a public record and the City had ready access to the invoice it had destroyed, it had a duty to produce that public record from sources readily available, to wit: Hintze or Deloitte. *See id.* § 22.1(2).

Further, we are not persuaded the City "substantially complied" with the request or the invoice provided "no insight" into the City's decision-making activities. The plaintiffs sought "all invoices" from Deloitte. The invoice provided before the task was complete disclosed the amounts the City was spending incrementally at tax-payer expense and the City's willingness to continue said expense. We cannot find the City's claim amounted to a liberal interpretation of chapter 22 that promotes public access to indisputably public records. *See id.* § 22.1(3)(b) (defining "public records" to include "all records relating to the investment of public funds"). The district court erred in concluding the City had no duty to produce the invoice in response to the public records request.

### C.    The Deloitte Scope of Services Document

On April 11, 2013, the plaintiffs requested, among other things, the "engagement letter and any attachments" between Deloitte and the City. The City admits it did not initially produce the Deloitte Scope of Services document received in January 2013.[11] However, the City argues this was an "inadvertent omission," which it cured by providing a copy of the document on September 19 after this litigation was initiated in June.[12] The City admits the Deloitte Scope of Services document is a public record subject to disclosure but argues "inadvertence" does not amount to a "refusal" to produce.[13]

---

[11] In its finding of facts, the district court indicated the document was not produced because it had not been provided to the custodian of the public record. This claim is not made on appeal.

[12] Warner's e-mail indicates the document was produced after the City recognized its "oversight" in failing to produce it with the initial response to the open records request. In his deposition, Warner stated he provided the document in compliance with the April 11 records request.

[13] "Refusal" means "the act of refusing or denying." *Refusal*, *Webster's Third New Int'l Dictionary* (unabridged ed. 2003). In turn, "refuse" is defined as to "deny" or "show or

We note the City promptly provided the Deloitte contract to which the Deloitte Scope of Services served as "Appendix B." The City argues its failure to produce was inadvertent, not a refusal. The burden rests with the plaintiffs to show by a preponderance of the evidence the failure to produce the document constituted a "refusal." The plaintiffs simply allege the September 19 letter from Warner, with which the Deloitte Scope of Services was produced, constitutes a tacit admission the City violated chapter 22. But no such admission was made. To the contrary, the e-mail indicates the document was withheld by error, not as an act of refusal.

Iowa courts have previously considered whether the mere failure to produce documents constitutes a refusal. In *Horsfield*, the Iowa Supreme Court found "refusal" encompassed a situation where "a substantial amount of time ha[d] elapsed since the records were requested and the records ha[d] not been produced at the time the requesting party file[d] suit under [chapter 22]." 834 N.W.2d at 463 n.6. Notably, in *Horsfield*, the documents were requested in January 2010, the plaintiff brought suit in March 2010, and *no* documents were produced until April 2010, when a 617-page production was made. *Id.* at 462. In *Braunschweig v. Bormann*, No. 04-0537, 2005 WL 1224685, at *4 (Iowa Ct. App. May 25, 2005), this court found a county auditor had not "refused" to produce documents where the documents were orally requested in early September, the documents were requested in writing on September 24, the lawsuit was instituted on September 26 when *no* documents had been produced, and the documents

---

express a positive unwillingness to do or comply with (as something asked, demanded, expected)." *Refuse*, *Webster's Third New Int'l Dictionary* (unabridged ed. 2003).

were produced "within a few days thereafter." There is no evidence the City intentionally failed to produce any responsive documents; it simply mistakenly omitted an appendix to the Deloitte contract provided to the plaintiffs. When the City discovered its error, it provided the document to the plaintiffs. The plaintiffs have failed to show by a preponderance of the evidence under these circumstances the City's failure to produce the documents was a "refusal" as required by chapter 22.

### D.     The Legal Memorandum

In the April 24 records request, the plaintiffs requested "[a]ll memo[s], reports, or other documents received from" Hintze's law firm sent to Malin or the City regarding the casino acquisition. It is undisputed the Hintze January 9 legal memorandum, which Hintze had sent to Warner, Buettner, and Rafique, was not produced. The records request specifically stated: "If you claim any of these seven requests pertain to confidential information and are claiming secrecy please cite the applicable chapter code section you allege applies." The City made no claim of confidentiality or privilege in either its response to the public records request or in its answer to the plaintiffs' petition.

The City contends the document was subject to attorney-client privilege and thus did not need to be produced.[14] *See* Iowa Code § 22.7(4) (noting certain public records are to be kept confidential, including "[r]ecords which represent and constitute the work product of an attorney, which are related to litigation or

---

[14] It is worth noting the plaintiffs first received a copy of this memorandum when it was produced by Deloitte pursuant to the subpoena the plaintiffs served during this litigation; accordingly, it would appear Deloitte did not assert any claim that attorney-client privilege applied.

claim made by or against a public body"); *see also Horsfield*, 834 N.W.2d at 463 (holding chapter 22 "does not affect other specific statutory privileges recognized by the legislature, such as the attorney-client privilege").

The City further argues it had no duty to identify an exemption or plead privilege as an affirmative defense; it concludes it was simply entitled to withhold the document. The plaintiffs disagree, alleging the City must both invoke a section 22.7 exemption in response to a request and affirmatively assert attorney-client privilege in its answer, the failure of which constitutes waiver.[15]

Section 22.7 provides "[t]he following public records shall be kept confidential, unless otherwise ordered by a court." The section does not indicate when the party keeping the documents confidential must also disclose that a document has been designated as such. However, case law indicates parties have claimed exemptions prior to litigation and pled aspects of chapter 22 as affirmative defenses. *See Diercks*, 806 N.W.2d at 649 (stating the city's "answer to the counterclaim denied bad faith and alleged as affirmative defenses compliance with chapter 22 and reliance on advice of counsel"); *Gabrilson*, 554 N.W.2d at 270 (noting "the superintendent of the Davenport schools[] refused to provide the [requested documents]" and, before the institution of any litigation, "based his refusal on the statutory exceptions to the Iowa open records law, claiming that the materials were confidential trade secrets and statutorily protected examinations"). Further, case law supports the conclusion that section 22.7 claims can be waived. *See Diercks*, 806 N.W.2d at 657 (finding the

---

[15] Again, the district court found the document was not produced because it had not been provided to the custodian of the public record. As before, this factual finding was not raised on appeal.

governmental body "waived confidentiality" when it disclosed the information sought to a third party).

Both parties also rely upon *Horsfield* for support of their respective positions. In *Horsfield*, the parties disputed certain e-mails the city had withheld subject to attorney-client privilege. 834 N.W.2d at 463. Notably, even prior to the institution of a lawsuit, the city sent the plaintiff "a privilege log for five emails . . . that the [c]ity considered protected by attorney-client privilege."[16] *Id.* at 450. Following the institution of litigation, the city produced 617 documents and a privilege log for eight e-mails it had withheld. *Id.* at 451. The Iowa Supreme Court held the city's subsequent determination to waive its attorney-client privilege, produce the e-mails, and utilize them at trial did not change that the city had an initial right to withhold the e-mails. *Id.* at 463. Importantly, however, the city had invoked privilege as a basis for its refusal. *Id.*

In the present case, the record reflects the City failed to notify the plaintiffs it was claiming privilege as to this document or to argue the exemption before the district court.[17] The City claims:

> There is nothing in chapter 22 that requires a city to specify any confidential information it may be withholding from the chapter 22 request. Similarly, there is nothing in chapter 22 that requires the City to plead as an affirmative defense that it withheld a document because of the attorney-client privilege. Rather, under chapter 22, materials may simply be withheld.

---

[16] Although use of a privilege log or similar procedure to claim confidentiality in response to a public records request would promote the objectives of our public records statute, we find nothing in Iowa Code chapter 22 or our case law that requires such a procedure.

[17] Specifically, the plaintiffs argue in their brief, "Davenport cannot now, for the first time on appeal, assert that they did not have to provide Plaintiffs attorney Hintze's January 9, 2013 legal memorandum because of attorney-client privilege."

The City does not dispute the legal memorandum constitutes a public record, or that it refused to disclose it, only that attorney-client privilege rendered it exempt from disclosure. Under chapter 22, the "one seeking the protection of one of the statute's exemptions bears the burden of demonstrating the exemption's applicability." *Clymer*, 601 N.W.2d at 45. Although pleading an exemption would put the opposing party on fair notice of the claim, we find no requirement that a governmental body must affirmatively plead an exemption to disclosure. Regardless, our courts have consistently held the burden of proving a public record is exempt from disclosure or production is on the governmental body claiming the exemption. *Id.*; *see also Diercks*, 806 N.W.2d at 652-54. Based on the parties' apparent agreement the City did not argue this issue before the district court, the City cannot now maintain this exemption on appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). The City has failed in its burden; accordingly, we reverse.

### IV. Conclusion

For the foregoing reasons, we affirm the district court's finding there was no violation of the Iowa Open Records Act with regard to the Deloitte due diligence work product and the Deloitte Scope of Services document. We reverse the district court's findings there was no violation of the Iowa Open Records Act with regard to the City's failure to produce the invoice the City received from Deloitte in February and the January 9 legal memorandum. We remand to the district court for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**