# IN THE COURT OF APPEALS OF IOWA

No. 23-0902
Filed August 9, 2023

**IN THE INTEREST OF G.S.,**
**Minor Child,**

**J.J., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Wapello County, William Owens, Associate Juvenile Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Ryan J. Mitchell of Orsborn, Mitchell & Goedken, P.C., Ottumwa, for appellant mother.

Brenna Bird, Attorney General, and Natalie Hedberg, Assistant Attorney General, for appellee State.

Samuel K. Erhardt of Erhardt & Erhardt, Ottumwa, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Ahlers and Chicchelly, JJ.

**BOWER, Chief Judge.**

A mother appeals the termination of her parental rights. Finding no basis for an extension and determining a guardianship is not in the child's best interests, we affirm.

**I. Background Facts & Proceedings.**

J.J. is the mother of G.S., born in 2021.[1] G.S. tested positive for methamphetamine at birth.[2] The child was discharged from the hospital to relative placement and has never been in the mother's physical custody.

The mother resided with the child and the custodial relative for a short time, but she was unable to maintain sobriety and left. She was given the opportunity to visit as much and as long as she wanted, supervised by the relative placement. Initially, she visited frequently, but over time her visits decreased and became intermittent because of health and substance-abuse issues. Some of her health issues stemmed from domestic violence by the child's father.

In January 2022, as part of the child-in-need-of-assistance (CINA) adjudication order, the court ordered the mother to "complete a mental health evaluation and follow all professional recommendations"; "complete a substance abuse evaluation and follow the recommendations"; "not use alcohol, illegal substances, or possess any drug paraphernalia"; and to "participate in drug testing as required."

---

[1] The father's parental rights were also terminated. He does not appeal.
[2] The mother's first child, born in 2019, also tested positive for methamphetamine exposure at birth. That child is in a legal guardianship with a maternal relative.

The mother was accepted into family treatment court. Her mental-health treatment attendance was inconsistent, and she did not participate in domestic violence services. Although she scheduled multiple substance-abuse evaluations, she did not follow recommendations and was discharged from or did not begin scheduled treatment programs. The mother often refused or did not show up for drug testing, would not respond to attempted contacts by caseworkers, and maintained an on-and-off relationship with the child's father despite a history of domestic violence and a no-contact order in place throughout the case.

In December, the mother gave birth to another child, and both the mother and child tested positive for methamphetamine. The mother and baby once again moved in with her relative, where she cared for the new baby and assisted caring for G.S. However, she would leave the house at night and not return until the early morning hours, and she moved back out in late January. The youngest child was adjudicated CINA, removed from the mother, and placed in the relative's care. The mother visits and helps with the children most days.

The juvenile court found the child could not be returned to the care of the mother at the time of the hearing and found an extension for reunification was not warranted. The juvenile court held a guardianship was not in the child's best interests and terminated the mother's parental rights under Iowa Code section 232.116(1)(h) (2023).[3]

---

[3] For the juvenile court to terminate a parent's rights under section 232.116(1)(h), the State must establish:
> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

**II. Standard of Review.**

"We review termination of parental rights de novo." *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). We give weight to, but are not bound by, the juvenile court's findings of fact. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).

**III. Analysis.**

We normally use a three-step analysis to review the termination of parental rights considering the grounds for termination, the best interests of the child, and if an exception to termination should apply. *Id.* at 472–73; *see also* Iowa Code § 232.116. We need not discuss any step the parent does not dispute. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

On appeal, the mother does not challenge the ground for termination of her parental rights or claim an exception to termination should apply. Rather, she asserts the court should have granted her additional time for reunification, termination is not in the child's best interests, and the court should have placed the child in a guardianship.

*Extension.* The mother argues she is "actively participating in visitations and her sobriety." She states an extension should be granted to place G.S. on the same timeline as her child born in December 2022.

---

(3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

In order to grant an extension, the juvenile court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

Following the birth of the youngest child in December 2022 and the filing of the termination petition, the mother made efforts to help care for the children and arranged for treatment again. However, the mother has not shown an ability to care for the child on her own or sustain positive change in any needed area. Without any demonstrated change in behavior, the court had no basis to grant an extension.

*Guardianship.* The mother's arguments as to the child's best interests and in favor of guardianship overlap, and we address them together. The mother explains her older child is in a guardianship under the relative's care, and the guardianship has been successful to date. Therefore, she argues, G.S. should similarly be placed in a guardianship. She speculates the children will be confused why the parents' rights are terminated as to G.S. and intact as to the older child.

"[A] guardianship is not a legally preferable alternative to termination." *In re B.T.*, 894 N.W.2d 20, 32 (Iowa Ct. App. 2017). Relevant factors in determining whether to terminate parental rights or place a child in a guardianship include the child's age, the length of the removal, the viability of other permanency options, and the relationship between the parent and guardian. *See A.S.*, 906 N.W.2d at 478; *B.T.*, 894 N.W.2d at 34. A guardianship requires a written report to the court every six months and is inherently uncertain as, at any time, a parent can challenge

the guardianship or the court could appoint a different guardian. *See* Iowa Code §§ 232.117–.118; *A.S.*, 906 N.W.2d at 477–78.

The relative placement testified she was willing to be guardian to the child but would adopt the child in the case of termination. The relative stated either way, the child would "be in the same home with the same people and doing the same thing every day at my house regardless of adoption or guardianship." The guardian's primary concern was to keep the child with the older sibling because of their strong bond.

The mother's history shows cyclical behavior. First, she is attentive to the child, obtains substance-abuse evaluations and arranges treatment, and attends her mental-health and medication management appointments. Next, she becomes unreliable in visitation attendance, stops going to treatment, and spends time with the father. Then, the cycle begins again; this pattern has continued since 2019.

When considering the possibility of guardianship, the juvenile court stated,

> While it is true that [G.S.'s] sibling, [J.], is in a guardianship there was never formal juvenile court action in that case. Given the history shown here had the juvenile court assumed jurisdiction in [J.'s] case it is quite likely her case would have ended much like [G.S.'s] case. Simply because [J.'s] guardians beat the department to the courthouse and established a guardianship for her does not mean guardianship is the most appropriate solution for [G.S.].
> By their very nature, guardianships can be modified or terminated. So placing [G.S.] in a guardianship would prevent her from reaching the permanency she deserves. Aside from [J.'s] guardianship status neither parent has offered a compelling reason [G.S.'s] case warrants establishment of a guardianship instead of termination.
> In sum, given the age of the child, the length of time the child has been removed, the lack of any substantial progress toward reunification, and the availability of other viable permanency options it is clear guardianship would not be appropriate.

The placement is the only home the child has ever known, and the child looks to the relative as the primary caregiver. "[I]t is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *W.M.*, 905 N.W.2d at 314 (citation omitted). The child deserves a full-time parent who places the child's interests above her own. The mother has yet to do so. Permanency for the child and the child's interests are best served through termination of parental rights and adoption rather than a guardianship. We affirm.

**AFFIRMED.**