# IN THE COURT OF APPEALS OF IOWA

No. 24-2039
Filed February 25, 2026

**Hendrik Christiaan Van Pelt,**
Plaintiff–Appellee,

v.

**Iowa Public Information Board,**
Defendant–Appellant.

Appeal from the Iowa District Court for Clayton County,
The Honorable Laura J. Parrish, Judge.

**AFFIRMED**

Brenna Bird, Attorney General, and John R. Lundquist, Assistant Attorney General, attorneys for appellant.

Hendrik Christiaan Van Pelt, Guttenberg, self-represented appellee.

Considered without oral argument
by Schumacher, P.J., and Badding and Langholz, JJ.
Opinion by Langholz, J.

**LANGHOLZ, Judge.**

Like many cities, the City of West Des Moines contracted with a private company, Flock Group, Inc., to install cameras on public roads to capture vehicle information and send notifications to the City. Flock's data helps the City gather evidence for stolen cars, missing persons, and other investigations. As part of the contract, Flock created a deployment plan—a map of camera locations—for the City to approve. The contract also dictates that the "entire agreement" between the City and Flock includes the contract "together with" other documents, including the deployment plan.

Hendrick Van Pelt asked the City to see a copy of the contract with Flock, including the deployment plan. The City produced the contract but not the deployment plan, stating it never retained a copy so there was nothing to produce. Van Pelt then complained to the Iowa Public Information Board, which dismissed the complaint without investigation, reasoning that the deployment plan was owned by Flock and thus the City had no obligation to produce it. Van Pelt petitioned for judicial review and the district court reversed, finding Flock was contracted to perform governmental functions and thus the plan should have been disclosed. The Board now appeals.

The unique facts and posture of this case, as well as binding precedent from our court, compel us to affirm. The City is a party to its contract with Flock, and thus the entire agreement—which expressly includes the deployment plan—belongs to the City just as much as it belongs to Flock. And published precedent instructs that government bodies must produce documents that are otherwise public records and readily available. Thus, Van Pelt's complaint is—at least at this preliminary stage—legally sufficient. So we affirm the district court's judgment reversing and remanding Van Pelt's complaint for further proceedings before the Board.

## I.

The City contracted with Flock in the spring of 2023 for license plate recognition services. Generally, Flock installs cameras that capture photos and videos of vehicles traveling on public roadways. Using the vehicle data collected by that footage, Flock sends notifications to local law enforcement. Flock thus provides a law enforcement investigative tool, aiding the City in gathering evidence for missing persons, stolen vehicles, and the like.

Under the contract, Flock agrees to "advise" the City "on the location and positioning of the [cameras] for optimal license plate image capture." The contract then requires the parties to "mutually agree" on the City's designated locations, positions, and angles of the cameras, which becomes the "deployment plan." Following the City's review and approval of the deployment plan—a map of the locations—any later changes to the plan result in fees associated with reinstalling or repositioning the cameras. Elsewhere in the contract, the City's "installation obligations" include any obligations "required by the Deployment Plan," including possibly providing adequate power sources for the cameras, securing permits, or paying taxes. And the "Entire Agreement" representing the "complete and exclusive statement of mutual understanding" between the City and Flock was defined to include the principal contract signed by those parties "together with" order forms, the reinstall policy, and the "Deployment Plan(s)."

In October 2023, Van Pelt submitted a records request to the City asking for "a copy of the agreement between the City of West Des Moines and Flock Safety, including any addenda like the deployment plan and reinstall fee schedule." In response, the City provided the contract and a later

3

amendment but did not provide the deployment plan.[1] According to the City, it merely "reviewed a map online to approve it, but did not create the map, print it, or save the record in any other means." So it reasoned that the deployment plan was not a public record because it was not in the City's possession, nor did the City have any duty to create the record by requesting it from Flock or otherwise reconstructing it.

Unsatisfied, Van Pelt complained to the Iowa Public Information Board and alleged the City violated our open-records laws when it refused to obtain and produce the deployment plan since the "agreement incorporates the missing documents by reference." The Board dismissed the complaint without investigation, finding it legally insufficient. *See generally* Iowa Admin. Code r. 497-2.1(2)(b) (2024) (allowing the Board to dismiss a complaint without investigation if it determines the complaint is "legally insufficient," "frivolous," or "without merit"). The Board reasoned "[t]he City provided Mr. van Pelt all the records in their possession." As it read the contract, Flock would "advise" the City on the deployment plan for the City's approval, and thus "[t]he City did not own the record, the vendor did." Thus, the Board concluded that the City did not violate Iowa's open-records laws.

Van Pelt petitioned for judicial review and the district court reversed the Board's dismissal. The court found that the deployment plan was not "of or belonging to" the City. But it agreed with Van Pelt that the City contracted with Flock to have it perform governmental functions—"facilitating law enforcement's ability to enhance its purpose and function"—and so the deployment plan was a public record subject to disclosure. *See generally* Iowa Code § 22.2(2) ("A government body shall not prevent the examination or

---

[1] The City also did not provide the reinstall fee schedule, but that request is not part of this appeal. So we do not discuss it further.

copying of a public record by contracting with a nongovernment body to perform any of its duties or functions."); *Gannon v. Bd. of Regents*, 692 N.W.2d 31, 39–44 (Iowa 2005) (interpreting section 22.2(2) and finding the records of a university's foundation were public records because the foundation was "performing a government function pursuant to its contract with" the university).

The Board appeals.[2]

## II.

Iowa's open-records laws give the public the right to examine all public records, subject to some enumerated confidentiality exceptions. Iowa Code §§ 22.2(1), 22.7. What qualifies as a public record is broad—the definition includes "all" documents, "stored or preserved in any medium," that are "of or belonging to" a city. *Id.* § 22.1(3)(a). And that breadth informs the "presumption in favor of disclosure" and our State's "liberal policy in favor of access to public records." *Ripperger v. Iowa Public Info. Bd.*, 967 N.W.2d 540, 550 (Iowa 2021) (cleaned up).

The threshold question here is whether the development plan is "of or belonging to" the City. On this point, *KMEG Television, Inc. v. Iowa State Board of Regents* is instructive. 440 N.W.2d 382 (Iowa 1989), *abrogated on other*

---

[2] The district court ruling did not specify which standard of review under Iowa Code section 17A.19(10) was used. Because the court's order turned both on its reading of Iowa Code chapter 22 and its application to the contract between the City and Flock, we presume the court applied paragraphs "c"—which asks whether the Board erroneously interpreted "a provision of law whose interpretation has not clearly been vested by a provision of law in the discretion of the agency"—and "m"—which asks whether the Board irrationally, illogically, or wholly unjustifiably applied law to fact. Iowa Code § 17A.19(10)(c), (m). We thus apply those same standards of review here. *Carreras v. Iowa Dep't of Transp.*, 977 N.W.2d 438, 444 (Iowa 2022).

*grounds by Gannon*, 692 N.W.2d at 42–43. There, the University of Iowa sold broadcast rights to certain sporting events to a private company. *Id.* at 384. That private company then solicited bids from local broadcasters to air basketball and football games. *Id.* A passed-over broadcaster later sued to obtain the bidding documents, arguing the company was acting on behalf of the University and was thus subject to Iowa's open-records laws. *Id.*

Our supreme court found the bidding documents were not "of or belonging to" the state. *Id.* Working through the statute's text, the court reasoned that records are "of" the government if they were "produced in, or originate[d] from, the government." *Id.* at 385. And records are "belonging to" the government if they "originate from other sources but are held by public officers in their official capacity." *Id.* (cleaned up). Applying those principles, the bidding documents were "not now, nor [had] they ever been, in the possession of the University." *Id.* The records had never "been shared with the University," nor did the University ever "indicate[] an interest in having or reviewing them." *Id.* Indeed, under the parties' contract, "all network revenues inured to [the company's] benefit in consideration of its payment of a hefty sum to the University up front." *Id.* Thus, the bidding documents fell outside the scope of chapter 22, and the broadcaster's policy arguments that they "*should* belong to the University" were irrelevant. *Id.*

Here, the Board asserts that Flock created the document and the City has never physically possessed the record, defeating any conclusion that the record "belongs to" the City. We disagree. In contrast with *KMEG*, the City executed a contract with Flock, which defined the "entire agreement" between the parties to include the deployment plan. Thus, more than having a mere interest in having or reviewing the plan, the City had approval rights over that plan and Flock could not proceed unless and until the City reviewed

and signed off. While the City never obtained a physical copy of the plan, it did receive and review an electronic copy. And because the plan is expressly incorporated into the contract itself, the City, as a party to the contract, always has a right to the document. Thus, the entire contract between the City and its contractor "belongs to" the City, and so the deployment plan falls within the definition of a public record subject to examination.

Still, it is undisputed that the City does not physically possess the deployment plan. As the Board sees it, whether the City *should have* retained the full contract is outside the scope of chapter 22, and our open-records laws do not require the City to retrieve documents from third parties on behalf of requestors. To this end, the Board points us to *Clark v. Banks*, 515 N.W.2d 5 (Iowa 1994) (per curiam). There, a sheriff changed his policy regarding firearms-justification forms, opting to return completed applications to the applicant rather than retain the forms. *See id.* at 6. A citizen sued, alleging that returning the forms to the applicant was an improper work-around the sheriff's open-records duties. *See id.* Our supreme court found the sheriff had no duty to retain the forms, and thus they were not public records subject to examination once they were out of the sheriff's possession. *Id.* at 7. Indeed, it cautioned that whether "a sheriff *should* be required to maintain" the forms was "more appropriately addressed to the legislature." *Id.*

*Clark* is distinguishable. Unlike the sheriff and private citizens who could ignore any of requests by the sheriff to provide their already approved and returned application forms, the City and Flock are in an ongoing contractual relationship. The records request here does not invade Flock's private corporate files—which the City has no contractual right to inspect— but asks for part of the "entire agreement" between the City and Flock. Regardless of its decision to retain a physical copy, the contract belongs to

7

the City just as much as it belongs to Flock. *Cf. City of Dubuque v. Dubuque Racing Ass'n*, 420 N.W.2d 450, 453–54 (Iowa 1988) (finding a private nonprofit's meeting minutes were not public records because, among other reasons, "there is no statutory requirement or contractual provision that requires the DRA to provide copies of its board and executive committee meetings to the City").

This case is more like *Diercks v. Malin*, 894 N.W.2d 12 (Iowa Ct. App. 2016). In *Diercks*, a city contracted with a consulting firm. *See id.* at 14. A citizen requested all invoices from the consulting firm, and the city gave what was in its possession but did not produce one invoice because it was cancelled, a city employee deleted the email containing the invoice, and it was not elsewhere retained by the city. *See id.* at 15–16. The citizen sued, and our court found that the city had "ready access to the invoice it had destroyed" because the consulting firm and city attorney both still had copies. *Id.* at 20–21. And so, the city "had a duty to produce that public record from sources readily available," including the consulting firm. *Id.*

*Diercks* is a published opinion from our court. Following its holding, as we must, the City is charged with producing public records that exist and are readily available to it. And the facts here are perhaps more compelling than in *Diercks*, as the City has greater control and ownership of its contract with a third party than a cancelled and therefore understandably deleted invoice from a consulting firm. *Cf. Consol. Irrigation Dist. v. Sup. Ct.*, 205 Cal. App. 4th 697, 710 (Cal. Ct. App. 2012) (interpreting California public-records statute to contemplate both actual and constructive possession of a record and explaining "an agency has constructive possession of records if it has the right to control the records, either directly or through another person").

8

We ultimately need not resolve, as the district court did, whether Flock was engaged in a governmental duty or function such that documents it solely owns or controls could fall within the reach of chapter 22. *See Gannon*, 692 N.W.2d at 38–44. Instead, at least at this preliminary stage and on the limited record before us, Van Pelt's complaint sufficiently alleged the deployment plan belonged to the City, not just to Flock, and that it was readily available to the City.

Finally, and relatedly, we stress the unique posture and facts of this case. Van Pelt seeks judicial review of the Board's decision to dismiss his complaint without investigation. As the Board's attorney phrased it below, "we're not weighing the merits of Mr. van Pelt's complaint" but only "determining whether or not, on its face," the complaint "appears legally sufficient" and "could have merit." In this way, this judicial-review appeal resembles appeals from grants of motions to dismiss civil petitions, where we take all facts as true and ask whether the plaintiff failed to state a claim upon which relief can be granted. *See* Iowa R. Civ. P. 1.421(1)(f). Based on the limited record before us—mainly the contract between the parties—Van Pelt's complaint, on its face, is at least legally plausible under chapter 22 and our governing caselaw. In so finding, we express no opinion on the ultimate merits of the complaint or whether any confidentiality exceptions that have not yet been asserted by the City could apply.

**AFFIRMED.**